HERBERT A. SULLIVAN, INC., & others[1] *vs.* UTICA MUTUAL
INSURANCE COMPANY.

Suffolk. January 6, 2003. - May 16, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Insurance,* Defense of proceedings against insured. *Contract,* Performance and
breach, Insurance. *Actionable Tort. Estoppel. Practice, Civil,* Motion to
amend, Reconsideration, Judgment notwithstanding verdict, Attorney's
fees. *Consumer Protection Act,* Insurance. *Negligence,* Insurance company.
*Evidence,* Expert opinion. *Agency,* Independent contractor. *Damages,* At-
torney's fees, Loss of profits.

In an action by an insured against its insurer seeking damages for the insurer's
alleged failure to provide the insured with an adequate defense to claims
brought against it by a third party that included a claim for negligence, al-
leging that the insured had failed to secure appropriate insurance policies,
the judge did not err in concluding that the insurer no longer had a duty to
defend the insured after the third party filed an amended complaint without
the negligence claim where, although the initial claim was covered by an
errors and omissions policy under which the insurer agreed to defend
subject to a reservation of rights, the allegations in the amended complaint,
even when viewed in the light most favorable to the insured, were not
"reasonably susceptible" of a construction that would bring them within
the purview of claims covered under the errors and omissions policy.
[393-395]

On a claim in a civil action by an insured that its insurer breached the provi-
sions of an errors and omissions policy by failing to provide a competent
defense to a third-party action during a period when the insurer supplied a
defense, the motion judge did not err in granting summary judgment to the
insurer with respect to the insured's claim for breach of contract, where the
insurer had a duty of reasonable performance that was separate from its
contractual obligation to defend and, to the extent that the insured had al-
leged that the insurer breached its related duty of reasonable performance,
its cause of action was for tortious conduct, specifically negligence.
[395-397]

An insured was not entitled to recover attorney's fees from its insurer under
an exception to the so-called "American rule" set forth in *Hanover Ins.
Co.* v. *Golden,* 436 Mass. 584 (2002); *Rubenstein* v. *Royal Ins. Co.,* 429
Mass. 355 (1999); and *Preferred Mut. Ins. Co.* v. *Gamache,* 426 Mass. 93
(1997), where the insured failed to establish its insurer's obligation to
defend claims brought against the insured by a third party. [397-398]

---

[1] J. Herbert Sullivan Insurance Agency, Inc.; Petroleum Insurance Agency,
Inc.; Cost Control Corporation; and John Herbert Sullivan.

Herbert A. Sullivan, Inc. *v.* Utica Mutual Insurance Company.

In an action by an insured against its insurer seeking damages for the insurer's alleged failure to provide the insured with an adequate defense to claims brought against it by a third party, the trial judge did not abuse his discretion in denying the insured's motion to amend its pleadings to conform to the evidence by adding two causes of action (estoppel by prejudice and estoppel by control), where the motion was filed over five years after the insured had commenced its action and over two years after summary judgment had narrowed the issues for trial to a single issue of negligence, and the delay was arguably prejudicial to the insurer, and where there was no showing that the insurer had consented to the amendment. [398-399]

In an action by an insured against its insurer seeking damages for the insurer's alleged failure to provide the insured with an adequate defense to claims brought against it by a third party, the motion judge did not abuse his discretion in granting summary judgment to the insurer on the insured's claim under G. L. c. 93A, where the evidence on which the insured primarily relied to support its c. 93A claim was not available to the judge because the insured had not yet obtained the evidence through the discovery process, and where the insured had not filed an affidavit pursuant to Mass. R. Civ. P. 56 (f) and requested a continuance to obtain the additional evidence; further, the trial judge did not abuse his discretion in declining to reconsider the decision of the motion judge. [399-401]

In an action by an insured against its insurer seeking damages for the insurer's alleged failure to provide the insured with an adequate defense to claims brought against it by a third party, the trial judge did not err in failing to grant the insurer's motion for judgment notwithstanding the verdict on the insured's negligence claim, where the evidence, considered in the light most favorable to the insured, led to a reasonable inference that the insurer failed to satisfy its duty of care and, therefore, was negligent in managing the insured's defense in the third-party action; moreover, although the insurer was not required to pay for the insured's legal fees in defense of the third-party action after it had properly withdrawn, the insurer was responsible for those legal fees, to the extent that there were any, resulting from the insurer's negligent handling of the third-party action, but only for such fees as were incurred by the insured prior to the insurer's withdrawal; and further, the insured was entitled to the award of lost profits resulting from its loss of customers as a consequence of the insurer's negligence in overseeing the third-party action. [401-406, 410-414]

Although an insured had acquiesced in the legal representation provided by its insurer in an action brought against the insured by a third party, this court concluded that the insurer was not vicariously liable for the negligence of the attorney who conducted the defense for the insured. [406-411]

CIVIL ACTION commenced in the Superior Court Department on July 28, 1995.

Motions for summary judgment were heard by *Thayer Fremont-Smith*, J., and a claim for negligence was tried before *Paul A. Chernoff*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Lon A. Berk* (*Anna M. Stafford*, of Virginia, & *Russell F. Conn* with him) for the defendant.

*William A. McCormack* for the plaintiffs.

*Richard J. Riley & Peter C. Kober* for Complex Insurance Claims Litigation Association & another, amici curiae, submitted a brief.

*Owen Gallagher* for Gallagher & Associates, P.C., amicus curiae, submitted a brief.

SPINA, J. In this complex case, we consider the obligations of an insurance company, and the counsel it hires, to defend an insured against a third-party claim. The plaintiffs, collectively known as Sullivan Risk Management Group (SRMG), commenced an action against Utica Mutual Insurance Company (Utica Mutual), seeking damages for Utica Mutual's alleged failure to provide SRMG with an adequate defense to claims brought against it by St. Mary's Refining Company (St. Mary's).[2] A judge in the Superior Court granted Utica Mutual's motion for summary judgment with respect to four of SRMG's claims. A jury trial was held on SRMG's sole remaining claim, alleging negligence. In response to special questions, the jury attributed fifty-eight per cent of the negligence in the case to Utica Mutual and the counsel it had hired to defend SRMG; the jury attributed forty-two per cent of the negligence to SRMG. Judgment entered in the Superior Court (1) ordering that SRMG recover the sum of $976,975.69 from Utica Mutual on its negligence claim, and (2) dismissing those claims set forth in SRMG's amended complaint that had been the subject of the prior summary judgment order. We granted SRMG's application for direct appellate review, and now affirm in part and remand in part for further proceedings.[3]

1. *Background.* The basic facts are as follows.[4] SRMG is a Waltham-based risk management and insurance agency that

[2]St. Mary's Refining Company is a West Virginia corporation that operates an oil refinery and ships petroleum products by barges to other States.

[3]We acknowledge the amicus briefs filed by Gallagher & Associates, P.C., and by Complex Insurance Claims Litigation Association and Alliance of American Insurers.

[4]We relate additional facts and procedural background in our separate discussion of each issue.

services a national, niche market of small petroleum companies. It was the named insured under an errors and omissions liability policy (errors and omissions policy) issued by Utica Mutual that provided coverage for "negligent acts, errors, or omissions in the conduct of the insured's business" and obligated Utica Mutual to defend SRMG with respect to any such claims. The errors and omissions policy contained a specific exclusion for any claims relating to the payment of premiums to SRMG.

On December 30, 1993, St. Mary's filed a complaint against SRMG in the United States District Court for the Northern District of West Virginia (St. Mary's action). St. Mary's had retained SRMG to secure various lines of coverage for insurable risks associated with St. Mary's business. In its complaint, St. Mary's asserted claims for (1) violation of West Virginia statutes and unjust enrichment where St. Mary's had allegedly been overcharged for premiums; (2) breach of contract where SRMG had allegedly failed to procure environmental impairment liability coverage and had obtained redundant automobile liability coverage; and (3) negligence where SRMG had allegedly failed to secure an "occurrence" policy for excess or "umbrella" liability, thereby placing St. Mary's at risk of being uninsured for claims falling after a particular time period.

On February 14, 1994, James Lee Crumrine, a claims examiner, sent a letter to SRMG advising it that Utica Mutual would defend SRMG in the St. Mary's action, subject to a reservation of rights. Utica Mutual reserved its right to withdraw from the defense and to deny coverage on the ground that while the errors and omissions policy provided coverage for loss arising out of "negligent acts, errors, or omissions," the policy excluded coverage for claims relating to the payment of premiums. Utica Mutual retained Christopher Bastien, a West Virginia attorney, to defend SRMG in the St. Mary's action.

In early 1995, St. Mary's filed an amended complaint which was, in significant ways, different from its original complaint. St. Mary's asserted claims for (1) violation of West Virginia statutes and unjust enrichment where St. Mary's had allegedly been overcharged for premiums; (2) breach of contract where SRMG had allegedly collected monies in excess of the premiums; and (3) fraud where SRMG had allegedly concealed

from St. Mary's the types and costs of the insurance that it had procured.[5] St. Mary's amended complaint no longer included a claim for negligence, and each of the restated causes of action related to premium overcharges, which were specifically excluded from coverage. As a result, on July 18, 1995, Utica Mutual sent a letter to SRMG stating that, pursuant to its prior reservation of rights in February, 1994, it would withdraw its defense of SRMG in the St. Mary's action effective August 4, 1995, and would not reimburse SRMG for any defense fees and costs incurred in the St. Mary's action after that date.[6]

On July 28, 1995, SRMG filed a complaint against Utica Mutual arising from Utica Mutual's withdrawal of its defense of SRMG in the St. Mary's action. A five-count amended complaint was substituted. Count I was for declaratory judgment to resolve the controversy over whether the errors and omissions policy provided coverage for any damages judgment in the St. Mary's action or provided for SRMG's ongoing defense by Utica Mutual. Count II was for negligence and alleged, inter alia, that Utica Mutual had failed to employ competent counsel to represent SRMG in the St. Mary's action and had failed to properly supervise the actions of such counsel. Count III was for breach of contract and alleged that because Utica Mutual had failed to provide SRMG with a competent defense in the St. Mary's action, had subsequently terminated its obligation to defend SRMG in that action, and had failed to provide coverage for any judgment or settlement that might result from such action, Utica Mutual had breached the terms of the errors and omissions policy. Count IV was for unfair and deceptive insurance practices and alleged that the actions of Utica Mutual had violated the provisions of G. L. c. 176D.

[5] An affiliate of St. Mary's, Go-Mart, Inc., a West Virginia corporation, was added as a plaintiff.

[6] In June, 1996, the St. Mary's action went to trial. At the close of the plaintiffs' case, judgment was entered, as a matter of law, in favor of SRMG on those counts of St. Mary's amended complaint alleging breach of contract and statutory violations. At the close of all the evidence, judgment was entered in favor of SRMG on the remaining count of fraud. St. Mary's filed an appeal with the United States Court of Appeals for the Fourth Circuit, which was unsuccessful. See *St. Mary's Ref. Co.* v. *Herbert A. Sullivan, Inc.*, 112 F.3d 510 (4th Cir. 1997).

Count V was for alleged violations of G. L. c. 93A, §§ 9 and 11.

On March 11, 1998, prior to the completion of discovery, Utica Mutual and SRMG filed cross motions for summary judgment. A judge in the Superior Court allowed Utica Mutual's motion for summary judgment with respect to Counts I, III, IV, and V of SRMG's amended complaint. The judge denied summary judgment with respect to Count II, alleging negligence. SRMG's cross motion for summary judgment was denied, as was its subsequent motion for reconsideration. On April 5, 1999, SRMG filed a motion for leave to file a second amended complaint. The motion was denied as untimely and as seeking to resurrect claims that had already been eliminated through summary judgment.

Trial commenced on May 23, 2000, on SRMG's negligence claim. In response to special questions, the jury concluded that Utica Mutual had been negligent in its handling of the St. Mary's action, that Christopher Bastien, who had been acting as an agent of Utica Mutual, had been negligent in his legal representation of SRMG, and that SRMG had been negligent in its responsibilities as the client in the St. Mary's action. The jury awarded SRMG $607,000 for out-of-pocket expenses, including legal fees, and $500,000 for lost profits. Following the judge's issuance of rulings on a multitude of posttrial motions by both parties, judgment was entered in favor of SRMG in the amount of $976,975.69 (after factoring in SRMG's comparative negligence). Counts I, III, IV, and V of SRMG's amended complaint were dismissed with prejudice pursuant to the prior summary judgment order entered in 1998.

Utica Mutual filed a motion for judgment notwithstanding the verdict on the grounds that SRMG had failed to introduce evidence at trial that was central to its claim for negligence, that the jury's award of damages for alleged lost profits had no basis in the evidence and was merely speculative, and that the judge's calculation of interest on the damages award was wholly without support. The judge, who did an excellent job in handling this lengthy and complicated case, denied the motion. Both parties filed timely notices of appeal from the final judgment and from various orders that had been entered in the Superior Court both before and after trial.

SRMG has now raised the following issues for our review: (1) whether the motion judge erred in declaring that Utica Mutual properly withdrew its defense of SRMG when St. Mary's amended its complaint to eliminate a claim for negligence; (2) whether the motion judge erred in failing to enter summary judgment in favor of SRMG on its breach of contract claim; (3) whether the trial judge erred in denying SRMG's motion for attorney's fees where Utica Mutual breached its duty to defend SRMG in the St. Mary's action; (4) whether Utica Mutual's conduct estopped it from disclaiming its duty to defend SRMG; and (5) whether the evidence at trial warranted judgment in SRMG's favor on its claim pursuant to G. L. c. 93A. In its cross appeal, Utica Mutual asserts that the trial judge erred in failing to grant its motion for judgment notwithstanding the verdict where SRMG (a) failed to present expert testimony as to the standard of care owed by an insurance company in managing its insured's defense; (b) failed to establish that Utica Mutual should be held vicariously liable for the alleged negligence of Christopher Bastien; and (c) failed to prove that its alleged damages were caused by any conduct of either Utica Mutual or Bastien.

2. *Duty to defend covered claims.* SRMG contends that summary judgment should not have been allowed with respect to Count I of its amended complaint, seeking declaratory relief, because Utica Mutual had no basis for withdrawing its defense of SRMG in the St. Mary's action. SRMG asserts that the duty to defend arises as long as the underlying complaint hints, even through general allegations, at the "possibility" that all or a portion of the claims set forth therein are covered by the errors and omissions policy. Here, SRMG argues that, even after amendment, St. Mary's complaint continued to allege facts that were "reasonably susceptible" to an interpretation suggesting that SRMG had committed negligent acts.

Pursuant to Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974), summary judgment "shall be rendered . . . [if] there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." See *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 553 (1976). We examine the record in the light most favorable to SRMG. See *Coveney* v.

*President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 17 (1983). The interpretation of an insurance contract and the application of policy language to known facts present questions of law for the judge to decide. See *Sherman* v. *Employers' Liab. Assur. Corp.*, 343 Mass. 354, 356-357 (1961); *Kelleher* v. *American Mut. Ins. Co.*, 32 Mass. App. Ct. 501, 503 (1992). The critical issue is whether the summary judgment record alleges "a liability arising on the face of the complaint and policy." *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. 316, 324 (1983). We conclude that the summary judgment record here does not.

"[T]he question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." *Continental Cas. Co.* v. *Gilbane Bldg. Co.*, 391 Mass. 143, 146 (1984), quoting *Sterilite Corp.* v. *Continental Cas. Co.*, supra at 318. See *Liberty Mut. Ins. Co.* v. *SCA Servs., Inc.*, 412 Mass. 330, 331-332 (1992). The scope of an insurer's duty to defend is based on "the facts alleged in the complaint and those facts which are known to the insurer." *Boston Symphony Orch., Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 11 (1989). Specifically, "the process is one of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy." *Sterilite Corp.* v. *Continental Cas. Co.*, supra at 318. The duty to defend is broader than the duty to indemnify. See *Liberty Mut. Ins. Co.* v. *SCA Servs., Inc.*, supra at 337. "[T]he underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage. There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage." *Sterilite Corp.* v. *Continental Cas. Co.*, supra at 319, quoting *Union Mut. Fire Ins. Co.* v. *Topsham*, 441 A.2d 1012, 1015 (Me. 1982). However, "when the allegations in the underlying complaint 'lie expressly

outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate' or defend the claimant." *Timpson* v. *Transamerica Ins. Co.*, 41 Mass. App. Ct. 344, 347 (1996), quoting *Terrio* v. *McDonough*, 16 Mass. App. Ct. 163, 168 (1983).

In its original complaint, St. Mary's asserted a cause of action for negligence, alleging that SRMG had failed to secure appropriate insurance policies. That claim was covered by the errors and omissions policy, and Utica Mutual agreed to defend SRMG subject to a reservation of rights. St. Mary's original cause of action for negligence was expressly removed from its amended complaint. St. Mary's amended complaint resulted in the assertion of claims that all concerned alleged premium overcharges and fraudulent acts of concealment by SRMG. The allegations in the amended complaint, even when viewed in the light most favorable to SRMG, were not "reasonably susceptible" of a construction that would bring them within the purview of claims covered under the errors and omissions policy. As such, the motion judge did not err in concluding that Utica Mutual no longer had a duty to defend SRMG in the St. Mary's action after St. Mary's filed its amended complaint, and that SRMG was not entitled to declaratory relief on Count I of its amended complaint.

3. *Breach of contract.* SRMG asserts that the motion judge, and later the trial judge, erred in failing to enter judgment in SRMG's favor on Count III of its amended complaint, alleging breach of contract. It contends that the duty of care owed by Utica Mutual to SRMG arose out of the errors and omissions policy, and that SRMG was deprived of the benefit of its contractual bargain because the defense provided by Utica Mutual in the St. Mary's action was negligent. As such, SRMG claims that it was entitled to the full amount of damages that the jury found it had incurred, with no deduction for its comparative negligence, plus reimbursement for attorney's fees and expenses both in the Superior Court action and in this appeal.

"When a party binds himself by contract to do a work or to perform a service, he agrees by implication to do a workmanlike job and to use reasonable and appropriate care and skill in

doing it." *Abrams* v. *Factory Mut. Liab. Ins. Co.*, 298 Mass. 141, 143 (1937). "Although the duty arises out of the contract and is measured by its terms, negligence in the manner of performing that duty as distinguished from mere failure to perform it, causing damage, is a tort." *Id.* at 144. See *Hartford Cas. Ins. Co.* v. *New Hampshire Ins. Co.*, 417 Mass. 115, 118 (1994) (insurer may be liable in contract for negligent failure to satisfy promise to defend and liable in tort for negligent handling of defense).

The insurer in *Abrams* v. *Factory Mut. Liab. Ins. Co.*, *supra*, by undertaking the defense of its insured as mandated by contract, engaged in affirmative action, and that action exposed its insured's legally protected interests to the risk of harm. The insurer's action, therefore, gave rise to a duty of reasonable performance, the violation of which was tortious. See *Larabee* v. *Potvin Lumber Co.*, 390 Mass. 636, 640 (1983) (cause of action in tort may arise out of contractual relationship); *Attleboro Mfg. Co.* v. *Frankfort Marine, Acc. & Plate Glass Ins. Co.*, 240 F. 573, 578-579 (1st Cir. 1917) (same). "Tort obligations are in general obligations that are imposed by law on policy considerations to avoid some kind of loss to others. They are obligations imposed apart from and independent of promises made and therefore apart from any manifested intention of parties to a contract or other bargaining transaction." W.L. Prosser & W.P. Keeton, Torts § 92, at 656 (5th ed. 1984). "Entering into a contract with another pursuant to which one party promises to do something does not alter the fact that there was a preexisting obligation or duty to avoid harm when one acts." *Id.* at 657.

Here, we have concluded that, because the allegations in St. Mary's amended complaint were not reasonably susceptible of a construction that brought them within the purview of claims covered under the errors and omissions policy, Utica Mutual did not breach that contract by terminating its defense of SRMG when St. Mary's amended its complaint. However, SRMG also claims that Utica Mutual breached the provisions of the errors and omissions policy "[b]y failing to provide a competent defense" to the St. Mary's action during the time period that Utica Mutual did supply a defense. That claim, while arising out of the contract, is in essence a tort. Prior to its proper

withdrawal and notwithstanding its reservation of rights, Utica Mutual had a duty of reasonable performance that was separate from its contractual obligation to defend. Utica Mutual fulfilled its contractual obligation by hiring Christopher Bastien to represent SRMG in the St. Mary's action. To the extent that SRMG has alleged that Utica Mutual breached its related duty of reasonable performance, its cause of action is for tortious conduct, specifically negligence. Accordingly, we conclude that the motion judge did not err in granting summary judgment to Utica Mutual with respect to SRMG's claim for breach of contract.[7]

4. *Attorney's fees for breach of duty to defend.* SRMG contends that, regardless of the theory on which its case was tried, the judge erred in denying its posttrial motion for attorney's fees where Utica Mutual breached its duty to defend SRMG in the St. Mary's action. Having paid its insurance premiums, SRMG claims that it was entitled, under the terms of the errors and omissions policy, to a competent defense. SRMG argues that without an award of attorney's fees, it will remain uncompensated for having to assume the obligation of its own defense when Utica Mutual withdrew.

Massachusetts has adopted the "American rule" which allows successful litigants to recover their attorney's fees and expenses only in a limited class of cases. See *Waldman* v. *American Honda Motor Co.*, 413 Mass. 320, 321-323 (1992). One exception to the "American rule" is the case in which an insured successfully establishes in a declaratory judgment action the insurer's duty to defend. See *Hanover Ins. Co.* v. *Golden*, 436 Mass. 584 (2002); *Rubenstein* v. *Royal Ins. Co.*, 429 Mass. 355 (1999); *Preferred Mut. Ins. Co.* v. *Gamache*, 426 Mass. 93 (1997).

Here, in its declaratory judgment action, SRMG failed successfully to establish that Utica Mutual had a continuing duty to defend SRMG after St. Mary's amended its complaint, and we

---

[7]There is little practical difference between the elements of proof in a tort action for negligence and a contract action for the negligent provision of legal services. Cf. *Thomas* v. *Massachusetts Bay Transp. Auth.*, 389 Mass. 408, 409-410 (1983). See W.L. Prosser & W.P. Keeton, Torts § 92, at 655 (5th ed. 1984) ("The distinction between tort and contract liability, as between parties to a contract, has become an increasingly difficult distinction to make").

have upheld the motion judge's proper conclusion to that effect. Because this is not a case where the insurer's obligation to defend was established by the insured, the exception to the American rule set forth in *Hanover Ins. Co.* v. *Golden, supra*; *Rubenstein* v. *Royal Ins. Co., supra*; and *Preferred Mut. Ins. Co.* v. *Gamache, supra*, is not applicable.

5. *Estoppel theory of recovery.* SRMG asserts that the trial judge should have allowed it to recover contract damages and attorney's fees under the theory that Utica Mutual's conduct estopped it from disclaiming its duty to defend SRMG in the St. Mary's action. We disagree.

On October 26, 2000, over four months after the jury had rendered their verdict, SRMG filed a motion to amend the pleadings to conform to the evidence by adding two causes of action, estoppel by prejudice and estoppel by control.[8] See Mass. R. Civ. P. 15 (b), 365 Mass. 761 (1974). The judge denied SRMG's motion to amend. He took note of SRMG's claims that discovery had resulted in the production of evidence that was not available at the time a motion judge had removed estoppel theories from the case.[9] The judge also noted that no motion for reconsideration citing newly discovered evidence had been presented to the motion judge. The trial judge concluded that SRMG's assertions coming several months after trial were "too little, too late."

While, pursuant to rule 15 (b), a motion to amend the pleadings to conform to the evidence may be made after trial, the timing of such a motion is a factor that may be considered by the judge in ruling on the motion. See *Castellucci* v. *United States Fid. & Guar. Co.*, 372 Mass. 288, 291-292 (1977); *Bul-*

---

[8]This motion has not been included in the joint appendix. Because the motion was brought after the trial, to conform the pleadings to the evidence, we assume that it was brought pursuant to Mass. R. Civ. P. 15 (b), 365 Mass. 761 (1974), not 15 (a).

[9]It is unclear from the record when the estoppel theories were first raised and then removed from the case. On April 5, 1999, SRMG filed a motion for leave to file a second amended complaint that would have reinstated its claims for breach of contract and violation of G. L. c. 93A. Because this motion has not been included in the joint appendix, we do not know whether it, in fact, included any estoppel claims. The motion was denied as untimely and as seeking to resurrect claims already disposed of unfavorably to SRMG by way of summary judgment.

*lock* v. *Zeiders*, 12 Mass. App. Ct. 634, 637 (1981). A judge may also weigh the prejudice to the nonmoving party. See *Hamed* v. *Fadili*, 408 Mass. 100, 105 (1990).

Based on the record before us, the judge acted well within his discretion in denying SRMG's motion to amend the pleadings. Such motion was filed over five years after SRMG had commenced its action and over two years after summary judgment had narrowed the issues for trial down to the single issue of negligence. To the extent that ongoing discovery resulted in the production of evidence relevant to any estoppel claims, SRMG should have, in the first instance, moved to delay the summary judgment proceedings until discovery could be completed, thereby allowing SRMG fully to assess its potential claims. In the alternative, at the very least, SRMG should have filed a motion for reconsideration of the motion judge's decision to remove estoppel theories from the case. There is no evidence in the record that SRMG took either action. The case proceeded to trial as a negligence action. SRMG's attempt to amend its pleadings after trial to add estoppel claims was clearly untimely and arguably prejudicial to Utica Mutual.

An amendment pursuant to rule 15 (b) also requires the moving party to show that the issue to be added was "tried by express or implied consent of the parties." Utica Mutual vigorously opposed every effort by SRMG to introduce its estoppel theory. There has been no showing of the existence of the requisite level of consent. See *Hamed* v. *Fadili*, *supra* at 105-106. We conclude that the trial judge did not abuse his discretion in denying SRMG's motion to amend its pleadings.

6. *Claim pursuant to G. L. c. 93A*. SRMG asserts that the uncontested evidence presented at trial warranted entry of judgment in its favor on its G. L. c. 93A claim. SRMG points out that Utica Mutual's own documents showed that its conduct was not merely negligent, but that it had intentionally and wilfully mistreated SRMG while handling the St. Mary's action. Based on that evidence, SRMG contends that the trial judge should have vacated the 1998 order of summary judgment on Count V of SRMG's amended complaint and awarded SRMG relief under c. 93A.

On March 11, 1998, the parties filed cross motions for sum-

mary judgment, prior to the completion of discovery. Summary judgment was allowed with respect to Count V of SRMG's amended complaint on the ground, inter alia, that negligence, standing by itself, does not amount to a violation of c. 93A. SRMG subsequently moved for reconsideration based, in pertinent part, on its receipt of additional discovery materials, namely a "UNI-Claims Plus — Remarks Display Diary" (diary), which set forth a summary of events and comments pertaining to the St. Mary's action as it was being handled by Utica Mutual. SRMG argued that the diary, on its face, evidenced Utica Mutual's bad faith in the handling of the St. Mary's action, thereby creating an issue for trial as to whether Utica Mutual's conduct constituted a violation of G. L. c. 93A. The motion for reconsideration was denied on the ground that the judge had decided the earlier motion based on the summary judgment record and would not reconsider based on subsequent discovery. Additional motions by SRMG at trial and after trial to reinstate its c. 93A claim were likewise denied.

The evidence on which SRMG primarily relies to support its c. 93A claim, the diary and Utica Mutual's Claims Technical Manual, was not considered by the motion judge because SRMG had not yet obtained these materials through the discovery process. "In our review of a motion for summary judgment we are 'confined to an examination of the materials before the court at the time the rulings were made. Neither the evidence offered subsequently at the trial nor the verdict is relevant.' " *Cullen Enters., Inc.* v. *Massachusetts Prop. Ins. Underwriting Assn.*, 399 Mass. 886, 889-890 n.9 (1987), quoting *Voutour* v. *Vitale*, 761 F.2d 812, 817 (1st Cir. 1985), cert. denied sub nom. *Saugus* v. *Voutour*, 474 U.S. 1100 (1986). There is nothing in the record before us indicating that SRMG filed an affidavit pursuant to Mass. R. Civ. P. 56 (f), 365 Mass. 824 (1974), representing that "for reasons stated [it could not] present by affidavit facts essential to justify [its] opposition" to Utica Mutual's motion for summary judgment, and requesting a continuance to take depositions or to obtain additional materials through discovery. Had SRMG filed such an affidavit and obtained a continuance of the summary judgment proceedings, it could have gone forward with discovery and secured neces-

sary evidence to support its c. 93A claim.[10] By failing to invoke rule 56 (f), SRMG waived its right to further discovery before the judge issued his decision on Utica Mutual's motion for summary judgment. See *Alake* v. *Boston*, 40 Mass. App. Ct. 610, 611 n.3 (1996). Accordingly, we conclude that the motion judge did not abuse his discretion in granting summary judgment to Utica Mutual on SRMG's c. 93A claim when he did. Cf. *First Nat'l Bank* v. *Slade*, 379 Mass. 243, 244-245 (1979); *Brick Constr. Corp.* v. *CEI Dev. Corp.*, 46 Mass. App. Ct. 837, 840 (1999).

We recognize that it is within the inherent authority of a trial judge to "reconsider decisions made on the road to final judgment." *Franchi* v. *Stella*, 42 Mass. App. Ct. 251, 258 (1997). See *Riley* v. *Presnell*, 409 Mass. 239, 242 (1991) (trial judge can reconsider motion for summary judgment sua sponte). "Absent a certificate conforming to the requirements of [Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974)], an order for partial summary judgment is not a judgment, but merely an order for judgment, interlocutory in nature, subject to revision at any time by the trial court prior to the entry of a judgment disposing of all claims against all parties to the action." *Acme Eng'g & Mfg. Corp.* v. *Airadyne Co.*, 9 Mass. App. Ct. 762, 764 (1980). While the power to reconsider a case, an issue, or a question of fact or law, once decided, remains vested in the court until a final judgment or decree is entered, a judge is not obligated to exercise such power. See *Peterson* v. *Hopson*, 306 Mass. 597, 600 (1940). In fact, the judge should hesitate before undoing the work of another judge. See *Barbosa* v. *Hopper Feeds, Inc.*, 404 Mass. 610, 622 (1989); Peterson v. *Hopson*, *supra* at 603. After hearing the evidence in this case and again after considering SRMG's posttrial motions, the judge declined to grant SRMG relief with respect to its claim under G. L. c. 93A, a claim that had already been considered and denied on several prior occasions. We conclude that his decision did not constitute an abuse of his discretion.

7. *Judgment notwithstanding the verdict.* Utica Mutual

---

[10]SRMG has not claimed that it could have proved that Utica Mutual's conduct in the St. Mary's action violated G. L. c. 93A in the absence of the Diary and the Claims Technical Manual.

contends that the judge erred by failing to grant its motion for judgment notwithstanding the verdict on the negligence claim. Based on our extensive review of the record, we disagree.

The standard of review for the denial of a motion for judgment notwithstanding the verdict is "whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the [nonmoving party].' " *Boothby* v. *Texon, Inc.*, 414 Mass. 468, 470 (1993), quoting *Dobos* v. *Driscoll*, 404 Mass. 634, 656, cert. denied sub nom. *Kehoe* v. *Dobos*, 493 U.S. 850 (1989). With this standard in mind, we consider the evidence in the light most favorable to SRMG. See *Commonwealth* v. *Johnson Insulation*, 425 Mass. 650, 660 (1997).

(a) *Breach of the duty of care.* Utica Mutual first argues that SRMG failed to establish the duty of care for an insurance company managing the defense of its insured in a third-party action. It asserts that this is an area of specialized knowledge, not within the ken of a lay jury. As such, Utica Mutual contends that SRMG was obligated to present expert testimony on the appropriate standard of care for an insurance company claims handler, and that it failed to do so.

We have held that, in this Commonwealth, an insurer is held to a standard of reasonable conduct in its defense of its insured. See *Hartford Cas. Ins. Co.* v. *New Hampshire Ins. Co.*, 417 Mass. 115, 118 (1994). See also *Magoun* v. *Liberty Mut. Ins. Co.*, 346 Mass. 677, 683-684 (1964) (general covenant to defend imposes on insurer obligation to defend insured at least in good faith and without negligence); 7C J.A. Appleman, Insurance Law and Practice § 4687, at 192 (rev. ed. 1979) ("The insurer has a duty to reasonably protect insured's interests and must provide the insured with competent counsel"). The test for determining whether a particular matter is a proper one for expert testimony is whether the testimony will assist the jury in understanding issues of fact beyond their common experience. See *Simon* v. *Solomon*, 385 Mass. 91, 105 (1982), and cases cited. The standard of reasonable conduct for an insurer acting pursuant to its contractual obligation to defend any claim made against its insured is not a matter within the common knowledge

of the ordinary lay person where that standard is not specifically set forth in the contract. Cf. *First State Ins. Co.* v. *Utica Mut. Ins. Co.*, 870 F. Supp. 1168, 1177 n.22 (D. Mass. 1994), aff'd, 78 F.3d 577 (1st Cir. 1996) (expert testimony provided as to sound insurance industry practice). Such standard of care is analogous to the standard of care owed by other professionals to their clients and is elucidated by expert testimony. See *Fishman* v. *Brooks*, 396 Mass. 643, 647 (1986) (expert testimony usually required to establish attorney negligence); *Harris* v. *Magri*, 39 Mass. App. Ct. 349, 353 (1995) (expert evidence required to show failure to meet standard of care in legal malpractice action). Only where professional negligence is so gross or obvious that jurors can rely on their common knowledge to recognize or infer negligence may the case be made without expert testimony. See *Pongonis* v. *Saab*, 396 Mass. 1005 (1985). See also *Matter of Tobin*, 417 Mass. 81, 86 (1994) (expert testimony not necessary to prove ethical violations by lawyers).

In its amended complaint, SRMG alleged, inter alia, that Utica Mutual negligently failed to employ seasoned trial counsel, negligently investigated the facts relating to the St. Mary's action, negligently failed to defend it in the St. Mary's action, and negligently failed to supervise and monitor the actions of retained counsel. SRMG was, therefore, required to present expert testimony on the standard of care owed by an insurance company to its insured in overseeing the defense of a third-party claim. We conclude that such opinion testimony was given by Utica Mutual's own claims examiners, James Lee Crumrine and Debra Cabral, and was further explicated by the observations of a percipient witness, John Herlihy, an attorney. Crumrine was asked for his opinion as a claims examiner, and we construe this inquiry as suggesting that Crumrine was providing testimony as an expert witness. Nonetheless, because Crumrine and Cabral were Utica Mutual's agents, their testimony constituted admissions as to the duty of care owed by an insurance company to its insured. Such admissions were the functional equivalent of expert testimony, from which a jury could infer the elements of negligence and causation. See *Collins* v. *Baron*, 392 Mass. 565, 568-569 & n.2 (1984).

In his deposition, which was admitted in evidence, Crumrine, the claims examiner who first handled the St. Mary's action, testified that as long as an insurance company is providing the defense, it has an obligation to make sure that the defense is adequate. He acknowledged that Christopher Bastien's initial report to Utica Mutual dated April 21, 1994, was relatively devoid of content and, thus, did not fulfil the purpose of an initial report. Bastien next provided a status report to Utica Mutual on September 22, 1994. Crumrine again expressed dissatisfaction about the thoroughness of the report.[11] Crumrine testified that he knew that there were discovery problems in the case, although he was unaware of the magnitude of such problems. Bastien provided a status report to Utica Mutual on November 11, 1994, in which he stated that he was going to give St. Mary's an extensive set of discovery requests. Crumrine testified that he did not recall making any follow-up inquiries as to whether such discovery had been conducted. Notwithstanding receipt of a letter from SRMG on February 6, 1995, expressing dissatisfaction with Bastien's handling of the St. Mary's action, no offer of substitute counsel was made.[12]

Utica Mutual also presented the testimony of Debra Cabral,

[11]The "UNI-Claims Plus — Remarks Display Diary," which sets forth a summary of events and comments pertaining to a particular case, was admitted in evidence without objection. On May 25, 1994, an entry was made by Crumrine in which he stated that he had had a long conversation with John Sullivan at SRMG and that they appeared to be "in good shape." In the next entry on August 1, 1994, Crumrine stated that he had not received any reports from Bastien and that if he had not "talked at length [with insured, he would] be firing firm no [questions] asked." In subsequent entries dated September 27, 1994, Crumrine noted as follows: "[Counsel] makes no effort to pick sides or rule on outcome. This is really maddening. . . . [Counsel] advises that despite what's been produced that [insured] has failed to comply [with discovery] and intimates [insured] is faced [with] some sort of imminent sanctions. . . . Need to discuss any [number] of things [with] counsel. . . . But given [counsel's] abject failure to timely and adequately [report] it will be all the harder [to] manage, direct and control disposition of this case."

[12]It was not until March 6, 1995, in response to SRMG's repeated complaints that it was not receiving a competent defense, that Utica Mutual agreed to retain substitute counsel, under a continuing reservation of rights. Utica Mutual's recommendation for replacement counsel was accepted by SRMG. Bastien was instructed to work with replacement counsel for a thirty-day period to effectuate a smooth transition and to ensure that SRMG's defense was not compromised.

the claims examiner who handled the St. Mary's action after Crumrine was promoted. With respect to her responsibilities, she testified that she was part of a team consisting of the insured, the defense attorney, and the claims examiner. They all worked together to try to resolve a case, whether it was to take the case all the way to trial or to settle if they felt that the insured might be liable. On cross-examination, Cabral stated that even if the insurance company believed that there might not be coverage for one count of a claim but that there might be coverage for another, the insurance company had to defend both counts and could not compromise the effort made to defend the noncovered count. Counsel for SRMG then read into the record portions of Cabral's deposition testimony in which she discussed the duties of a claims examiner in the errors and omissions department. Cabral testified that every claims adjuster should look at the facts of a case, determine if the insured had any liability, determine the applicability of coverage and exclusions under the insurance policy, and evaluate whether particular witnesses would be advantageous to the case. Cabral further stated that if witnesses had not been deposed by defense counsel, the adjuster would contact counsel with instructions to conduct discovery. She acknowledged that such action was not taken in this case. Finally, Cabral testified that as part of the insured's team, the claims examiner would assist in directing, monitoring, and managing the case.

SRMG presented the testimony of John Herlihy, an attorney and former claims handler, who, although not qualified as an expert claims handler, was allowed to respond to hypothetical questions as to the proper handling of insurance claims by claims adjusters, drawing on his observations as a percipient witness. He stated that no claims adjuster could understand a case without monitoring the discovery process. Herlihy testified that the claims department should be intimately involved in that whole process so as to assist both the insured and its defense counsel, especially in light of the insured's duty to cooperate. He stated that it was part of an insurance company's obligation to monitor and supervise discovery work taken or not taken by the attorney that the insurance company had retained for the insured.

Based on our review of the record here, we conclude that the opinion testimony of Crumrine and Cabral, coupled with the observations of Herlihy, established the duty of care that an insurance company owes to its insured in managing its defense against a third-party claim. Considering that evidence, as we must, in the light most favorable to SRMG, a reasonable inference could be drawn that Utica Mutual failed to satisfy this duty of care and, therefore, was negligent in managing SRMG's defense in the St. Mary's action. Such negligence is separate and apart from any negligent conduct by Bastien, to which we now turn.

(b) *Vicarious liability.* Utica Mutual contends that SRMG failed to establish that Christopher Bastien's representation of SRMG was controlled by Utica Mutual to render it responsible for his negligence. To the contrary, Utica Mutual argues, the evidence demonstrated that Bastien acted solely on behalf of SRMG. Utica Mutual further argues that, as a matter of law, defense counsel is an independent contractor with separate and distinct obligations to its client, the insured. As such, any alleged negligence by Bastien did not subject Utica Mutual to vicarious liability. We agree.

On receiving notification of the St. Mary's action, Utica Mutual informed SRMG that it would undertake SRMG's defense subject to a reservation of rights. It also advised SRMG that it might wish to discuss the matter with its own attorney, at its own expense. Such a reservation of rights letter has been approved by this court on several occasions. See *Three Sons, Inc.* v. *Phoenix Ins. Co.*, 357 Mass. 271, 276 (1970); *Magoun* v. *Liberty Mut. Ins. Co.*, 346 Mass. 677, 682-683 (1964); *Salonen* v. *Paanenen*, 320 Mass. 568, 572-573 (1947). In *Salonen* v. *Paanenen, supra* at 573-574, we concluded that an insurer's defense of its insured pursuant to reservation of rights did not estop the insurer from subsequently disclaiming liability because the insured had been put on notice of such possible disclaimer and could thus take necessary steps to protect its rights. At the same time, we also stated that the case should not be construed to mean that an insurer could reserve its rights to disclaim liability while also insisting on retaining control of the insured's defense. *Id.* at 574. When an insurer seeks to defend its insured

under a reservation of rights, and the insured is unwilling that the insurer do so, the insured may require the insurer either to relinquish its reservation of rights or relinquish its defense of the insured and reimburse the insured for its defense costs. See *Three Sons, Inc.* v. *Phoenix Ins. Co.*, *supra* at 276-277. Cf. *Magoun* v. *Liberty Mut. Ins. Co.*, *supra* at 684-685. That did not happen here.

Pursuant to Section II of the errors and omissions policy, Utica Mutual agreed to "defend any claim . . . seeking damages to which this insurance applies even if the allegations of the claim are groundless, false, or fraudulent." John Sullivan testified that when he received the reservation of rights letter from Utica Mutual, he contacted claims examiner James Lee Crumrine and expressed his desire to be represented by his own attorney in Boston. Sullivan was informed that the selection of counsel would be made by Utica Mutual. The policy language not only obligated Utica Mutual to defend SRMG, but also, by extension, gave it the right to choose defense counsel. There is no indication in the record that SRMG either insisted on having the reservation of rights removed or, in the alternative, insisted on assuming control of its own defense.[13] As such, we conclude that SRMG acquiesced in the legal representation provided by Utica Mutual. The issue then becomes whether and to what extent Utica Mutual was vicariously liable for the subsequent negligence of the attorney it hired to defend SRMG.

Generally speaking, the employer of an independent contractor is not liable for harm caused to another by the independent contractor's negligence, except where the employer retained some control over the manner in which the work was performed. See *Lyon* v. *Morphew*, 424 Mass. 828, 834 (1997). Restatement

---

[13]We note that in Section I of the errors and omissions policy, "[c]laims expenses" were defined as "[f]ees charged by any attorney hired by the insured with our written consent." Further, a "[l]itigation expense" was defined as "fees and disbursements charged by any attorney retained by us, or hired by you with our written consent, to defend a suit against you." This language suggests that it was anticipated that an insured might demand to hire its own defense attorney and be compensated therefor. There is no evidence here that Utica Mutual ever gave written consent for SRMG to hire its own attorney.

(Second) of Torts § 414[14] comment c (1965) illustrates the degree of control sufficient to impose liability for the negligence of an independent contractor:

> "In order for the rule stated in [§ 414] to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress, or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."

More specifically, we consider here whether an insurer who hires an attorney to defend its insured may be liable for any negligence by that attorney in the representation of the insured. "Since an insurer is not permitted to practice law, it must rely on independent counsel for conduct of litigation, and in doing so it does not assume a nondelegable duty to present an adequate defense. Since the conduct of the litigation is the responsibility of trial counsel, the insurer is not vicariously liable for the negligence of the attorneys who conduct the defense for the insured." 7C J.A. Appleman, Insurance Law and Practice § 4687, at 192-193 (rev. ed. 1979). Rule 5.4 (c) of the Massachusetts Rules of Professional Conduct, as appearing in 430 Mass. 1303 (1999), states: "A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services." As such, a lawyer hired by an insurer to represent an insured owes an unqualified duty of loyalty to the insured and must act at all times to protect the insured's interests. Cf. *McCourt Co.* v. *FPC*

---

[14]Restatement (Second) of Torts § 414 (1965) provides: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

*Props., Inc.*, 386 Mass. 145, 146 (1982) (lawyer owes duty of undivided loyalty to client). It is the lawyer who controls the strategy, conduct, and daily details of the defense. To the extent that the lawyer is not permitted to act as he or she thinks best, the lawyer properly can withdraw from the case. See Restatement (Second) of Agency § 385 comment a, at 193 (1958). In these circumstances, an insurer cannot be vicariously liable for the lawyer's negligence. See *Ingersoll-Rand Equip. Corp.* v. *Transportation Ins. Co.*, 963 F. Supp. 452, 454-455 (M.D. Pa. 1997) ("The attorney's ethical obligations to his or her client, the insured, prevent the insurer from exercising the degree of control necessary to justify the imposition of vicarious liability"); *Merritt* v. *Reserve Ins. Co.*, 34 Cal. App. 3d 858, 880 (1973) ("independent counsel retained to conduct litigation in the courts act in the capacity of independent contractors, responsible for the results of their conduct and not subject to the control and direction of their employer over the details and manner of their performance"); *Marlin* v. *State Farm Mut. Auto. Ins. Co.*, 761 So. 2d 380, 381 (Fla. Dist. Ct. App. 2000) (insurer had no obligation or right to supervise or control professional conduct of attorney and, therefore, was not liable for litigation decisions of counsel); *Feliberty* v. *Damon*, 72 N.Y.2d 112, 120 (1988) ("The insurer is precluded from interference with counsel's independent professional judgments in the conduct of the litigation on behalf of its client"); *State Farm Mut. Auto. Ins. Co.* v. *Traver*, 980 S.W.2d 625, 626 (Tex. 1998) (insurer not vicariously liable for malpractice of independent attorney selected to defend insured). But see *Trau-Med of Am., Inc.* v. *Allstate Ins. Co.*, 71 S.W.3d 691, 697 (Tenn. 2002) ("the insurer can be held vicariously liable for the acts or omissions of an attorney hired to represent an insured when those acts or omissions were, at least in part, directed, commanded, or knowingly authorized by the insurer").

Here, Bastien was retained by Utica Mutual to defend SRMG in connection with all five counts of St. Mary's complaint, even though not all claims might be covered by the errors and omissions policy. Bastien proceeded to keep Utica Mutual apprised of the progress of the case through periodic status reports. During proceedings before the United States District Court for the

Northern District of West Virginia, pertaining to the imposition of sanctions on SRMG for failure to comply with discovery, Bastien acknowledged that Utica Mutual had "indicated early on in the case [it] desired to not delay but to avoid expense if possible and to instead perhaps devote those dollars toward the possible resolution of the case." Further, in deposition testimony, Bastien stated that Crumrine wanted him "to hold off substantive discovery in the early days of the case until [he] could give [Crumrine] some analysis of the case and [they] could make a determination as to whether the case might be settlable." Nonetheless, at trial, Bastien unequivocally testified that Utica Mutual did not do anything to interfere with his ability to provide a complete defense to SRMG in the St. Mary's action. His moral, legal, and ethical obligations were to SRMG, notwithstanding the fact that he had been retained by Utica Mutual. While Utica Mutual paid for that representation, Bastien was subject to a professional duty to attend to the interests of his client, SRMG, and not to allow Utica Mutual's financial underwriting of the expenses to infringe on his duty of competent representation. SRMG may be able to seek redress in a malpractice action against Bastien. However, we conclude that Utica Mutual was not vicariously liable for Bastien's negligence.

(c) *Damages.* Utica Mutual asserts that SRMG failed to demonstrate that any breach of Utica Mutual's duty of care to SRMG caused it damages. SRMG had alleged that, because of Utica Mutual's negligent conduct, it was entitled to recoup the legal fees that it had to pay for its defense in the St. Mary's action, as well as its lost profits. The jury awarded SRMG $607,000 for out-of-pocket expenses, including legal fees, and $500,000 for lost profits. These amounts were reduced by forty-two per cent, the degree to which the jury found that SRMG was comparatively negligent.

Considering first the issue of legal fees, Utica Mutual argues that SRMG did not present evidence that it incurred legal fees in defense of the St. Mary's action because of the specific conduct of Utica Mutual. Rather, Utica Mutual asserts that SRMG only incurred legal fees because St. Mary's amended its complaint, thus eliminating Utica Mutual's duty to defend SRMG and requiring SRMG to pay for its own defense of

claims not covered by the errors and omissions policy. As such, SRMG's legal fees were incurred in the ordinary course of defending a lawsuit and not because of any alleged negligence by Utica Mutual. Although we agree with Utica Mutual that it was not required to pay for SRMG's legal fees in defense of the St. Mary's action *after* it had properly withdrawn, we conclude that Utica Mutual was responsible for those legal fees, to the extent that there were any, resulting from Utica Mutual's negligent handling of the St. Mary's action, but only the amount of such fees as were incurred by SRMG *prior* to Utica Mutual's withdrawal.

"A cause of action based on negligence requires that both negligence and harm be shown, with a causal connection between these two elements." *Cannon* v. *Sears, Roebuck & Co.*, 374 Mass. 739, 742 (1978). The requirement that a plaintiff sustain actual loss, or appreciable harm, will be met where the plaintiff incurs additional fees and expenses necessary to ameliorate the harm that would not have occurred but for the defendant's negligence. See *Cantu* v. *St. Paul Cos.*, 401 Mass. 53, 57-58 (1987) (subsequent need to hire lawyer to address issues mishandled by previous lawyer constitutes appreciable harm); *Pelletier* v. *Chouinard*, 27 Mass. App. Ct. 92, 95 (1989) (legal malpractice claim barred by statute of limitations where cause of action accrued when client suffered appreciable harm by expending additional attorney's fees and expenses to resolve attorney's error). See also *Levin* v. *Berley*, 728 F.2d 551, 554 (1st Cir. 1984) (retention of another attorney is harm in form of additional legal fees).

We have already concluded that Utica Mutual was negligent with respect to its own conduct in monitoring SRMG's defense in the St. Mary's action prior to its withdrawal. In its amended complaint, SRMG alleged that it had to hire counsel, at its own expense, to assist Bastien in the removal of sanctions imposed for failure to provide discovery materials to St. Mary's in a timely manner. SRMG further alleged that it had incurred substantial damages in an effort to remediate Utica Mutual's negligence and to defend the St. Mary's action. At trial, John Sullivan testified that SRMG had incurred legal fees and expenses of $610,000 in the St. Mary's action, and the itemized

bills were admitted in evidence. It is clear that SRMG incurred some legal fees and expenses to ameliorate the harm to its defense that would not have occurred but for the negligence of Utica Mutual. However, SRMG is not entitled to the legal fees and expenses it incurred after August 4, 1995, when Utica Mutual properly withdrew because none of the claims asserted in St. Mary's amended complaint was covered by the errors and omissions policy. Such fees and expenses were the responsibility of SRMG, incurred in the ordinary course of defending a lawsuit for noncovered claims. Because the jury's award for this component of damages was nearly the entire amount sought, it is obvious that a substantial portion of the award was unrelated to any negligence of Utica Mutual. This portion of the case must be remanded to the Superior Court for a determination of those legal fees incurred by SRMG between January, 1995, and August 4, 1995 (the date of Utica Mutual's withdrawal of defense), caused by Utica Mutual's negligence, less any amount paid by Utica Mutual in this regard.[15]

Considering next the issue of lost profits, Utica Mutual contends that SRMG failed to demonstrate that any conduct by Utica Mutual resulted in lost profits to SRMG.[16] It points out that no testimony was presented from customers who had stopped doing business with SRMG regarding their reasons for changing insurance providers. Furthermore, Utica Mutual as-

---

[15]Debra Cabral testified that she paid the lawyer hired by SRMG, Thomas Sullivan, for his work on the case.

[16]In connection with this argument, Utica Mutual also asserts that the Superior Court judge abused his discretion in denying Utica Mutual's motion in limine on the issue of lost profits. On April 6, 2000, Utica Mutual filed a motion, pursuant to Mass. R. Civ. P. 37, as amended, 423 Mass. 1406 (1996), for sanctions to preclude SRMG from offering any evidence relating to its claim for lost profits. The basis for the motion was that SRMG had failed to provide Utica Mutual with essential discovery necessary to its defense of such claim. The Superior Court judge admitted the evidence as to lost profits on a de bene basis, subject to an ultimate ruling after the jury's verdict. On May 15, 2000, Utica Mutual filed an emergency motion in limine to preclude all evidence relating to lost profits on the ground that SRMG still had failed to produce all documents relating to such claim and would not make John Sullivan available for deposition. When ruling on posttrial motions, the Superior Court judge concluded that the evidence of SRMG's lost profits, admitted de bene, should not be struck. The judge was not convinced that Utica Mutual was "hamstrung by the rush to discovery" in advance of trial or that SRMG's counsel "hid the ball" as to discovery of lost profits.

serts that the sum of $500,000 that was awarded by the jury was purely speculative. We disagree.

We first note what Utica Mutual does not argue. It has made no assertion that SRMG is not entitled to recover lost profits because SRMG did not sustain any personal injury or property damage as a result of Utica Mutual's negligence. The long-standing rule in this Commonwealth, in accordance with the majority of jurisdictions that have considered this issue, is that "purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage." *FMR Corp.* v. *Boston Edison Co.*, 415 Mass. 393, 395 (1993). See *Garweth Corp.* v. *Boston Edison Co.*, 415 Mass. 303, 305 (1993) ("The traditional economic loss rule provides that, when a defendant interferes with a contract or economic opportunity due to negligence and causes no harm to either the person or property of the plaintiff, the plaintiff may not recover for purely economic losses"); *Bay State-Spray & Provincetown S.S., Inc.* v. *Caterpillar Tractor Co.*, 404 Mass. 103, 107 (1989). Because Utica Mutual has not made this argument, it has been waived.

"Prospective profits may be recovered in an appropriate action when the loss of them appears to have been the direct result of the wrong complained of and when they are capable of proof to a reasonable degree of certainty." *Lowrie* v. *Castle*, 225 Mass. 37, 51 (1916). Lost profits are notoriously difficult to prove with precision. See *Arch Med. Assocs., Inc.* v. *Bartlett Health Enters., Inc.*, 32 Mass. App. Ct. 404, 407 (1992). "The plaintiff [is] not required to prove its lost profits with mathematical precision. Under our cases, an element of uncertainty is permitted in calculating damages and an award of damages can stand on less than substantial evidence. This is particularly the case in business torts, where the critical focus is on the wrongfulness of the defendant's conduct." *Ricky Smith Pontiac, Inc.* v. *Subaru of New England, Inc.*, 14 Mass. App. Ct. 396, 426 (1982). See *Datacomm Interface, Inc.* v. *Computerworld, Inc.*, 396 Mass. 760, 777 (1986); *National Merchandising Corp.* v. *Leyden*, 370 Mass. 425, 430 (1976).

SRMG asserts that it lost business as a direct result of Utica Mutual's negligence in overseeing its defense in the St. Mary's

action. John Sullivan testified that he was the key relationship person at SRMG responsible for meeting with customers and handling their insurance policy requests and renewals. Sullivan stated that virtually all his time from January, 1995, until the conclusion of the trial in June, 1996, was consumed with the St. Mary's action, particularly in preparing voluminous discovery materials and seeking removal of the sanctions against SRMG.[17] As a consequence, he lost ten customers during this time period due to his inability to service properly their insurance needs.

SRMG also presented the testimony of Thomas Blake, a certified public accountant hired by SRMG to assess the damages associated with its loss of certain customers. Blake analyzed, inter alia, the fees and commissions that SRMG had received from particular customers in the past and SRMG's history of customer retention. He then projected revenues for five years after customers were lost, taking into consideration revenue growth, interest rates, inflation, stock market activity, small business risks, and risks particularly attributable to SRMG as a specialized insurance business. Based on his analysis, Blake opined that SRMG had lost profits in the amount of $1,739,000. Taking into consideration all the evidence presented at trial, the jury then concluded that SRMG was entitled to $500,000 in lost profits.

It is the function of the jury to assess and weigh the soundness and credibility of an expert opinion. See *Leibovich* v. *Antonellis*, 410 Mass. 568, 573 (1991). Here, viewing the evidence, as we must, in the light most favorable to SRMG, a jury could reasonably infer that SRMG lost customers as a consequence of Utica Mutual's negligence in overseeing the St. Mary's action. Moreover, the jury's award was supported by the evidence. Accordingly, we conclude that, as this case was presented, SRMG was entitled to the award of lost profits.

8. *Conclusion.* The judgment is affirmed in all respects except as pertains to the legal fees component of SRMG's damages.

---

[17]We note that Utica Mutual has not argued that John Sullivan would have had to spend time preparing discovery materials irrespective of any negligence in the defense of the St. Mary's action.

We remand that matter to the Superior Court for further proceedings in accordance with this opinion.

*So ordered.*