HOWARD, Circuit Judge,
dissenting.
The majority reads the Federal exclusion to apply “if there is substantial overlap between the allegations in the complaint of the claimed proceeding and allegations in the complaint of the prior proceeding.” Ante at 500. The majority’s formulation, while well explained, is both overinclusive and underinelusive. The formulation is overinclusive because, as in this case, it works to deny the insured a defense and indemnification under a claims-made policy for claims made within the policy period which are “based upon, arise[] from, or in consequence of ... [a] fact, circumstance or situation” that has never been the subject of a demand or suit.[8] The formulation is underinelusive because, in some future case where there is overlap that is not “substantial” between the allegations in the complaint and the allegations in some prior complaint, it could work to create on the part of Federal a duty to indemnify for a judgment that is premised entirely on a claim “based upon, aris[ing] from, or in consequence of ... [a] fact, circumstance or situation” pleaded against the insured in a demand or lawsuit prior to the effective date of the policy.
The majority says that its formulation, inexact though it may be, is the inevitable result of the lawsuit-to-lawsuit comparison required by the policy’s definition of the term “claim” — i.e., “a civil proceeding commenced by the service of a complaint or similar pleading ... against any Insured for a Wrongful Act.” To avoid the inexactitude, the majority says, one would have to adopt a more conventional definition of the term “claim,” one which refers not to the entire lawsuit, but to individual liability theories asserted within the complaint. (This more common definition is, I must acknowledge, implicit in my use of the term “claim” in the opening paragraph of this dissent.) But application of this more common definition, in the majority’s view, is precluded by the unambiguous, lawsuit-focused definition the policy adopts.
I disagree. Certainly, the policy’s definitions section contemplates that the entire lawsuit will constitute the “claim” when the lawsuit is premised on a single “Wrongful Act” — -even when the single “Wrongful Act” gives rise to multiple liability theories. In such a situation, it makes sense to look to the “Act” on which the lawsuit is based, to ask whether that same (or a substantially similar) “Act” was the subject of a demand or suit brought prior to the effective date of the policy, and to apply the exclusion if so. But what of a situation, as here, where the lawsuit alleges not a single “Wrongful Act,” but a number of “Wrongful Acts,” only some of which were previously asserted against the insured? [9] The definitions section of the *502 policy does not compel us to treat the entire second, lawsuit as the relevant “claim” in such a situation. Rather, it is silent. Given this silence, we should strive to adopt and apply a definition of the term “claim” which addresses the parties’ reasonable expectations when they bargained for the “claims-made” policy underlying this litigation. And the definition which best addresses the parties’ reasonable expectations is one which regards as the relevant “claim” the liability theory (or liability theories) arising out of each alleged “Wrongful Act.”[10]
Application of this definition quickly yields the conclusion that there is a duty to defend in this case, as the complaint is reasonably susceptible of an interpretation under which there is at least one “claim” which arises from a “Wrongful Act” which was not alleged in the earlier securities litigation. See Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 788 N.E.2d 522, 530 (2003) (the duty to defend arises under Massachusetts law whenever “the allegations of the complaint are reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy terms”) (citation and internal quotation marks omitted); see also supra n. 2. Application of this definition also will yield more sensible results at the end of the lawsuit should there be a plaintiffs’ judgment on one or more of the asserted liability theories. Those “claims” ending in plaintiffs’ verdicts which are based on the same (or substantially similar) facts to those pleaded in the securities lawsuit would be excluded from coverage, but those based on different facts would be covered.
In sum, to the extent that the majority’s formulation reads the exclusion to deny coverage for claims that would be covered but for the fortuity that they are asserted in a complaint which also sets forth claims that are excluded, it denies the insured coverage (both defense and indemnification) to which it is entitled. And to the extent that the formulation allows for the possibility that Federal will be called upon to indemnify an insured for liability under a claim based on allegations that were lodged against the insured before the policy was purchased, it denies Federal a liability immunity for which it has bargained. I therefore respectfully dissent.

. There is no dispute that, at the very least, the amended complaint can be read to state breach of fiduciary duty claims on behalf of putative plaintiffs who joined Raytheon in 2000 — after the conduct at issue in the earlier securities lawsuit had concluded.

. The underlying lawsuit alleges at least four categories of "Wrongful Acts” on the part of *502 Raytheon: (1) failure to provide complete and accurate information to plan participants and beneficiaries, (2) imprudent investment, (3) a failure to monitor certain decision makers within the company, and (4) breach of the duty to avoid conflicts of interest. Only the first category of "Wrongful Acts” was alleged in the earlier securities litigation.

. Raytheon did not develop an argument for such a definition in either its papers opposing the insurers' (Fed.R.Civ.P. 12(b)(6) motion for judgment on the pleadings or in its appellate brief. But the question is one of law, see Cody v. Conn. Gen. Life Ins. Co., 387 Mass. 142, 439 N.E.2d 234, 237 (1982), as to which the mov-ant insurers bore the burden of persuasion. As the majority recognizes, our construction of the policy is not circumscribed by the parties’ arguments, see ante at 497-98, especially since we confront here boilerplate language which has been the subject of litigation before, see, e.g., id. at 497 n. 4, and which likely will be the subject of litigation again.