Smith, Herman J., J.
INTRODUCTION
This action arises from a lawsuit filed against Warner-Lambert Co. (“Warner Lambert”) by Harvey Albert (“Albert”), who was then represented by Attorneys Albert P. Zabin and Robert C. Zaffrann of the law firm of Schneider Reilly, LLP (together “the attorney defendants”). Albert contends that the negligence of the attorney defendants, along with that of his expert witness, Robert Brandwein of Policy & Management Associates, Inc. (together “the expert defendants”) caused him to lose a viable claim against Warner Lambert. Before the Court are the attorney *156 defendants’ and the expert defendants’ several renewed Motions for Summary Judgment. For the following reasons, all the motions will be ALLOWED.
BACKGROUND
The following undisputed facts are taken from the parties’ respective Statements of Undisputed Material Fact, submitted pursuant to Superior Court Rule 9A(b) (5).[1] In 1993, Albert obtained a patent for a device called the “All-In-One” Disposable Denture Container and Cleaner (“the product”). The product was a plastic apparatus which contained a tablet of Efferdent® denture cleaner and a space into which dentures could be inserted and cleaned using the tablet.
In October 1995, Albert entered into negotiations with Warner Lambert to develop and distribute the product. On February 10, 1998, Warner Lambert terminated negotiations with Albert and declined to use the product. In March 1999, Albert retained the attorney defendants to represent him in an action against Warner Lambert. In July 1999, suit was filed against Warner Lambert in the United States District Court for the District of Massachusetts (“the Warner Lambert litigation”).
The essence of Albert’s claim was that Warner Lambert misrepresented its intentions by assuring him that it was studying the commercial feasibility of the product when in fact it was not, causing Albert to forego other investment opportunities. The attorney defendants retained the expert defendants to establish Albert’s damages in the form of lost profits. The expert defendants prepared a Market Analysis and a Final Report that purported to show $1,020,600.00 in profits for a hypothetical corporate entity that would have been formed to sell the product, but for Warner Lambert’s actions. The nature and scope of Albert’s interest in such an entity was not specified.
Warner Lambert moved to strike the expert defendants’ opinions under Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993). The motion was denied, but the attorney defendants suggested to Albert that he settle the case. Albert did not. Warner Lambert deposed the expert defendants, and again moved to strike their opinions. Their second motion was allowed and the Warner Lambert litigation was dismissed.[2]
Thereafter, Albert lost other investors.[3] Albert had another survey conducted by Opinion Dynamics.[4] Albert has never obtained a report from a qualified expert that Efferdent® could be used in the product; a scientist from Warner Lambert concluded that Efferdent’s® sensitivity to heat and moisture meant that it was not as effective when packaged in the product as it was when packaged in normal Effer-dent® packaging. The product has never been marketed despite several solicitations sent out before, during, and after Albert’s negotiations with Warner Lambert.
Albert devised a “Four Year Budget Projection” (“business projection”) with the help of an attorney and an accountant. The business projection showed a loss of $1,073,500.00 over the first three years of a hypothetical business based on the product, with a profit in the fourth year. The business projection assumes an initial investment of $1,500,000.00 and further assumes that the business sells 16,000,000 units by its fourth year. Albert has characterized this assumption as “unreasonable” and stated that the business projection was never intended to be realistic.
Albert relies on a new expert, Robert F. Pagano, CPA, MST (“Pagano”) to establish his lost profits. Pagano’s opinion adopts the opinion of the expert defendants from the Warner Lambert litigation insofar as it assumes that there are 1,500,000 nursing home residents and that 50% of them have dentures requiring daily cleaning.
Based on the responses to a second market survey conducted by Opinion Dynamics Corporation, Pagano estimated the following rates of sales to nursing home residents who use dentures requiring daily cleaning:
Survey Response Response Percentage Capture Rate[5] Total Sales
Very likely 16% 90% $5,913,000
to buy
Somewhat likely 47% 50% 9,649,688
Somewhat unlikely 10% 20% 821,250
Very unlikely 14% 0 0
Don’t Know 12% _Q _Q
Total 93% N/A $16,383,938
Pagano assumed a $0.04 cost of production per unit, and a $0.02 cost per Efferdent® tablet.[6] Pagano assumed a sale price of $0.15, and adopted Brandwein’s assumption of a 15% profit margin, leading to $2,457,591.00 in estimated net profits each year.[7]
There is no evidence as to whether Albert’s investors would have provided loans or equity investments. There is no evidence as to what Albert’s stake in any corporation formed to sell the product would be, relative to his investors.
DISCUSSION 1. Standard
The standard governing motions for summary judgment provides that summary judgment shall be granted forthwith where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 423 (1983). In assessing the record on summary judgment, all reasonable inferences are drawn in favor of the nonmoving party. Terra Nova v. Fray-Witzer, 449 Mass. 406, 411 (2007).
2. Contract Claims Against All Defendants
Albert’s contract claims against all defendants properly sound in tort. “When a parly binds himself by contract to a work or to perform a service, he agrees *157 by implication to do a workmanlike job and to use reasonable and appropriate care and skill in doing it.” Herbert A. Sullivan, Inc. v. Utica Mut Ins. Co., 439 Mass. 387, 395-96 (2003), quoting Abrams v. Factory Mut. Liab. Ins. Co., 298 Mass. 141, 143 (1937). “Although the duty arises out of the contract and is measured by its terms, negligence in the manner of performing that duty as distinguished from mere failure to perform it, causing damage, is a tort.” Sullivan, 439 Mass. at 396, citing Abrams, 298 Mass. at 144. Hence, where a party to a contract performs its obligations negligently, a claim based on that negligent performance, “while arising out of the contract, is in essence a tort.” Sullivan, 439 Mass. at 396. Purely economic harms, like those alleged here, are unrecoverable in tort based on the economic loss doctrine. FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395-96 (1993).
“The traditional economic loss doctrine provides that, when a defendant interferes with a contract of economic opportunity due to negligence and causes no harm to either the person or property of the plaintiff, the plaintiff may not recover for purely economic losses.” Garweth Corp. v. Boston Edison Co., 415 Mass. 303, 305 (1993). Albert argues that the economic loss doctrine does not bar his contract claims because they fall within an exception that applies to fiduciary relationships. It is Albert’s burden to show a fiduciary relationship between him and the defendants. See Fleet Nat’l Bank, N.A. v. H&D Entertainment, Inc., 926 F.Sup. 226, 242 (D.Mass. 1996). Albert relies primarily on this Court’s (Hines, J.) decision denying the defendants’ Motion to Dismiss; in that decision, this Court declined to rule as a matter of law that, accepting all of Albert’s allegations as true and construing the facts in his favor, there was no fiduciary relationship between him and the defendants.
Notably, the Motion to Dismiss was denied before the revised standard governing motions to dismiss was enunciated in Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). Under the older, more lenient standard, a complaint would not have been dismissed “unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977).
On summary judgment, however, generalized assertions of trust and reliance will not suffice to show a fiduciary relationship. Patsos v. First Albany Corp., 433 Mass. 323, 335-36 (2001). Albert suggests that his position of reliance on the expert defendants’ specialized knowledge and expertise necessarily implicated a sense of trust and confidence, giving rise to a fiduciary relationship. The problem with this reasoning is that it would lead to a fiduciary relationship between any service professional and their customers. Anyone paying for the services of a mechanic, an interior decorator, a tailor, a butcher, a baker, or a candlestick-maker, to name just a few examples, is relying on that professional’s specialized knowledge and expertise. The definition of a fiduciary duty, however imprecise, does not encompass all these situations. Cf., e.g., Fleet, 926 F.Sup. at 242-43 (where accountant did not make recommendations to client about investment transactions, there was no fiduciary relationship). Additionally, while an expert witness has a duty to testify truthfully and to assist the fact finder, the existence of a fiduciary obligation to a party may undermine that duty. See Mass. G. Evid. 702; cf. Fed. Deposit Ins. Corp. v. Schoenberger, 781 F.Sup. 1155, 1157 (E.D.La. 1992) (auditor’s duty of independence and impartiality precludes fiduciary duty to client).
For these reasons, no fiduciary relationship existed between Albert and the expert defendants. Albert’s claims, properly styled as tort claims, are barred by the economic loss doctrine. However, a fiduciary relationship did exist between Albert and the attorney defendants. Fleet 926 F.Sup. at 242. Thus, this Court will analyze the claims against the attorney defendants in greater detail below.
3. Tort Claims Against the Attorney Defendants
Albert brings claims for legal malpractice against the attorney defendants. These claims are based on estimates of his lost profits because those profits would have been the measure of his recovery in the Warner Lambert litigation. Lost profits are only recoverable when they are proven with reasonable certainty. There is no recovery where such profits are uncertain, contingent, or speculative. Steele v. Kelley, 46 Mass.App.Ct. 712, 741 n.28 (1999). “Manifest ambiguities in ascertaining what would have been the course events in the face of complicated factors, under circumstances which have never come to pass, and inherent difficulties in calculating the amount of prospective gains, prevent the recovery of damages.” Lowrie v. Castle, 225 Mass. 37, 52 (1916). Here, Albert’s evidence of lost profits suffers from three principal infirmities.
First, some key portions of Albert’s experts’ reasoning in showing his lost profit damages are not explained. Specifically, Pagano’s adoption of Brandwein’s assumed 15% profit margin has no discernible basis in the evidence. Brandwein simply stated in an affidavit that “a 15 percent [profit] ratio is commonly relied upon by experts in the field as a reasonable way to estimate profits from earnings, particularly in the health care product market.” “The expert who testifies to no more than a final profit percentage or profit per unit figure, with no computation or substantiation to back it up, does not produce sufficient evidence to sustain a judgment for lost profits damages . . .” The courts have almost always held such evidence ‘too speculative’ or ‘too uncertain.’ “ Robert L. Dunn, Recovery of Damages for Lost Profits, at 643 (6th ed. 2005).
*158 Furthermore, at deposition, Brandwein conceded that his estimate represented “profit before return to investors and stockholders which would reduce it.” There is nothing in the evidence upon which to reasonably predict the measure of such a reduction, and thus nothing to reasonably predict Albert’s ultimate share of the lost profits.[8]
Second, Albert has not provided sufficient information about the structure of his business or its viability. Compare Lowrie, 225 Mass. at 52 (new sugar plantation business’ need for investment capital, and lack of certain information concerning where such investment capital could be obtained, weighed in favor of finding the business’ lost profits too speculative to be proven with reasonable certainty); see generally O’Brien v. Pearson, 449 Mass. 377, 389 (2007). Albert has no experience in the industry, and he has not shown where he would obtain investment capital. Compare Lowrie, 225 Mass. at 52-54. Finally, there is nothing to show what Albert’s share in this sort of business enterprise would be, relative to the shares of his investors. Without this information, it is impossible to rationally predict what Albert’s share of the lost profits would have been.
Finally, Albert’s evidence of lost profits contains internal self-contradictions. The estimates concerning the cost of production per unit for the product varied between $0.06 and $0.21. Predictions of Albert’s short-term profit were similarly inconsistent, with Albert’s business projection forecasting a net loss of more than $1,000,000.00 over the first three years of operation, but Pagano predicting a multimillion dollar profit over that same time. Pre-litigation projections by parties to a contract giving rise to litigation are relevant in determining whether lost profits can be established with reasonable certainty. Michael T. Weisman & Ben T. Clements, Protecting Reasonable Expectations: Proof of Lost Profits for New Businesses, 76 Mass.L.Rev. 186, 188 (Dec. 1991), citing Restatement (Second) of Contracts, §352 comment b (1981).
Because Albert cannot prove his lost profits with reasonable certainty, his proof of damages fails. Without such proof, he has no viable tort claims against the attorney defendants and summary judgment shall enter against his claims.
ORDER
For the foregoing reasons, the Court ALLOWS the defendants’ summary judgment motions and grants summary judgment in favor of all the defendants as follows:
1. Summary Judgment shall enter in favor of defendants Albert P. Zabin, Robert C. Zaffrann, Schneider Reilly, LLP on Counts I, II, III, and IV of plaintiff Harvey Albert’s Amended Complaint;
2. Summary Judgment shall enter in favor of defendants Robert Brandwein, and Policy and Management Associates, Inc. on Counts V and VI of plaintiff Harvey Albert’s Amended Complaint.[9]
3.As there are no surviving counts, final judgment shall enter.

The parties have not fully complied with the strictures of Rule 9A(b)(5). Here, Albert did not individually admit or deny each of the defendants’ factual assertions in accordance with Rule 9A(b)(5). While the Court has discretion to deem all facts not properly contested to be admitted, it has elected instead to examine the summary judgment record for evidence giving rise to a dispute of material fact that would preclude summary judgment, and has found none. Shannon v. Wallace, Civil Action No. 01-4708, 2002 WL 1856081 *1 n.2 (Mass.Super.Ct. Aug. 5, 2002) (Fabricant, J.) [15 Mass. L. Rptr. 63].

The expert defendants’ opinions were stmck because their survey obtained a response rate of under 10%, far less than the response rate of 50% that is generally considered to be minimally acceptable.

Albert has testified that his investors cited two principal reasons why they withdrew their support. First, if Warner Lambert was no longer interested in the product, there was no reason for them to be. Second, the investors were concerned about the time remaining on Albert’s patent. Because this is hearsay testimony, the Court would not consider it even if it were material to the issues governing the resolution of the Motions for Summary Judgment, which it is not.

The survey by Opinion Dynamics has a valid response rate.

Ostensibly the “capture rate” refers to the proportion of survey responders to whom sales of the product will actually be made.

Estimates of production cost vary within the summary judgment record; the cost of production is at some points estimated to be $0.21, and at others, $0.15.

Pagano made other predictions of sales to institutional buyers, such as hospitals. These predictions also relied on an assumed 15% profit margin.

Albert may not establish the reliability of Brandwein’s assumption through collateral estoppel. “Five requirements must be met for collateral estoppel to apply: (1) the issues in the two proceedings must be identical; (2) the party estopped must have had sufficient incentive to litigate the issue fully and vigorously; (3) the party estopped must have been a party to the previous litigation; (4) the applicable law must have been identical in both proceedings; and (5) the first proceeding must have resulted in a final judgment on the merits such that the defendant had sufficient incentive and an opportunity to appeal.” Smith v. Barboza, Memorandum and Order Pursuant to Rule 1:28, 70 Mass.App.Ct. 1111, 2007 WL 4105733 *1 (Nov. 19, 2007) (alterations in original, internal quotation omitted). The foregoing prerequisites for the application of collateral estoppel are plainly not satisfied here, and if more were needed, application of collateral estoppel would be unfair to the defendants in this matter based on the difference between their position in the Warner Lambert litigation and their position in this case. See Commonwealth v. Ringuette, 60 Mass.App.Ct. 351, 360 (2004) (“fairness is decisive consideration in use of offensive collateral estoppel”).

On August 26, 2008, this Court granted Summary Judgment in favor of defendant Clarendon National Insurance Company on Count VII of plaintiff Harvey Albert’s Amended Complaint.