ELAINE F. SANDMAN[1] vs. QUINCY MUTUAL FIRE INSURANCE
COMPANY & another.[2]

No. 10-P-2080.

Suffolk. October 4, 2011. - January 25, 2012.

Present: GRASSO, BROWN, & KANTROWITZ, JJ.

*Attorney at Law,* Malpractice. *Negligence,* Misrepresentation, Emotional
distress. *Emotional Distress. Contract,* Implied covenant of good faith and
fair dealing. *Agency,* Independent contractor. *Practice, Civil,* Motion to
dismiss.

In a civil action alleging that the defendant insurance company was vicari-
ously liable for the harm that the plaintiff sustained as a result of
misrepresentations and malpractice committed by an attorney hired by the
insurance company to represent it in an underlying subrogation action, the
judge properly dismissed the complaint as failing to state a claim upon
which relief could be granted, where the complaint did not allege that the
attorney was acting as an employee of the insurance company or as one
subject to its direction and control. [191-195] BROWN, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on
August 17, 2009.

A motion to dismiss was heard by *Raymond J. Brassard,* J.,
and a motion for reconsideration was also heard by him; a mo-
tion to further amend the complaint was heard by *Kimberly S.
Budd,* J.; and entry of separate and final judgment was ordered
by *Garry V. Inge,* J.

*Valeriano Diviacchi* for the plaintiff.

*Anna K. Bennett* for Quincy Mutual Fire Insurance Company.

GRASSO, J. The plaintiff, Elaine F. Sandman, appeals from the

---

[1]Individually and as parent of Emily Hope Sandman.

[2]Frank L. Fragomeni. A separate and final judgment entered in favor of
Quincy Mutual Fire Insurance Company pursuant to Mass.R.Civ.P. 54(b), 365
Mass. 820 (1974). Sandman's claims against Fragomeni, who is not a party to
this appeal, remain pending.

entry of a separate and final judgment in favor of her insurer, Quincy Mutual Fire Insurance Company (Quincy Mutual), following the allowance of its motion to dismiss her amended complaint. The gravamen of Sandman's complaint alleged that Quincy Mutual was vicariously liable for the harm that she and her daughter sustained as a result of the misrepresentations and malpractice of Frank L. Fragomeni, an attorney who represented Quincy Mutual in a subrogation action against a heating oil delivery company that spilled oil at Sandman's property. Sandman claimed that Fragomeni told her that Quincy Mutual had hired him to pursue her personal claims as well,[3] but failed to do so; and by the time Sandman realized that Fragomeni's representations were not true, the statute of limitations had run on her claims.

Because Sandman's complaint failed to state a claim as to which relief could be granted against Quincy Mutual for the misrepresentations and actions of an attorney and independent contractor over which Quincy Mutual had no control in the exercise of his professional responsibilities, we affirm.

1. *Facts and procedural history.* In evaluating Quincy Mutual's motion to dismiss, we accept the factual allegations in the amended complaint as true, but not the legal conclusions cast in the form of factual allegations. See *Leavitt* v. *Brockton Hosp., Inc.,* 454 Mass. 37, 39 & n.6 (2009). In March, 2004, during a heating oil delivery to Sandman's residence, a delivery line burst, causing her basement to flood with over 100 gallons of oil. Quincy Mutual agreed to cover the remediation cost of cleaning up the oil spill, which came to over $200,000, but denied coverage for damage to Sandman's personal property because of a policy exclusion for damage to personal property caused by pollution.[4] Quincy Mutual hired Fragomeni[5] to recover its remediation costs in a subrogation action against James Lamparelli,

---

[3]Quincy Mutual had previously rejected Sandman's claim for damage to her personal property under the pollution exclusion clause of the governing homeowner's policy.

[4]It is undisputed that Sandman was not entitled to personal property coverage because of the pollution exclusion in the policy.

[5]The allegations of the amended complaint assert that Fragomeni is an attorney with a usual place of business in Boston different from that of Quincy Mutual.

doing business as Supreme Fuel and Energy, the party that delivered the oil to Sandman's home.

Approximately two weeks after the oil spill, as Sandman was looking for an attorney to represent her in her individual claims against the oil delivery company, Fragomeni called Sandman and introduced himself as the attorney hired by Quincy Mutual to pursue her claims for negligence in the heating oil delivery. For the next five years, Fragomeni consistently led Sandman to believe that he represented her interests as well as those of Quincy Mutual and that he was seeking to recover her damages against Lamparelli. Most of those representations were oral, but in a May 5, 2005, letter to Sandman, Fragomeni referred to Sandman as a client and stated that "[o]nce we receive the final figure suit will be entered in the Superior Court against parties responsible for damages to your property."

In 2007, Fragomeni filed suit against Lamparelli on behalf of Quincy Mutual seeking subrogation for its remediation costs. Fragomeni never informed Sandman that he had not filed suit on her behalf as well.[6] To the contrary, Fragomeni continued to assure Sandman that he was attempting to collect her full damages. In the course of the subrogation action, Fragomeni assisted Sandman in finalizing and answering interrogatories and represented her at her deposition.

Quincy Mutual's subrogation claim against Lamparelli settled in the spring of 2009. When Sandman asked Fragomeni about her recovery, Fragomeni informed her, for the first time, that he was only representing Quincy Mutual, and that he could not assist her in pursuing her claims against Lamparelli because he had a conflict of interest as Quincy Mutual's attorney. By that time, Sandman's claims against Lamparelli were barred by the statute of limitations.

Sandman then filed an action in Superior Court against Fragomeni and Quincy Mutual, claiming misrepresentation, malpractice, negligent infliction of emotional distress, violation of the implied covenant of good faith and fair dealing, and violations of G. L. c. 93A. Quincy Mutual moved to dismiss the amended complaint under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974),

---

[6]Quincy Mutual Fire Insurance Company vs. Lamparelli, Norfolk Superior Court, No. NOCV2007-00334.

for failure to state a claim on which relief may be granted. In its motion to dismiss and supporting memorandum Quincy Mutual argued that the amended complaint failed to allege facts that could establish that Quincy Mutual was vicariously liable to Sandman for the malpractice and misrepresentations of Fragomeni, an independent contractor with nondelegable duties. See *Herbert A. Sullivan, Inc.* v. *Utica Mut. Ins. Co.*, 439 Mass. 387, 406-409 (2003) (*Sullivan*). Quincy Mutual argued as well that it could not be vicariously liable for Fragomeni's representations as to the existence and scope of any authority given to him by Quincy Mutual to act as Sandman's attorney in her personal claim for damages against Lamparelli.

The motion judge allowed Quincy Mutual's motion to dismiss "for reasons set forth on the record." Sandman's subsequent motion for reconsideration was denied, as was her motion to further amend the complaint. Separate and final judgment then entered on all claims against Quincy Mutual, and this appeal followed.

2. *Discussion.* We evaluate the adequacy of the amended complaint in accordance with *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 636 (2008), which requires that the plaintiff set forth factual allegations "plausibly suggesting" an entitlement to relief. "Factual allegations must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Ibid.*, quoting from *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007).

As pertinent to the claims against Quincy Mutual, the key factual allegations of Sandman's complaint are the assertions that (1) Fragomeni told Sandman that he had been hired by Quincy Mutual to pursue her personal claims against Lamparelli; (2) he referred to, and dealt with, her as his client in oral and written communications over the ensuing five years; and (3) Sandman reasonably relied on those assertions. Accepting that Sandman's allegations suffice to make out a claim that Quincy Mutual hired Fragomeni to represent Sandman in her personal claims against Lamparelli for purposes of rule 12(b)(6) and *Iannacchino, supra*, a central problem remains with Sandman's contention that Quincy Mutual can be vicariously liable for the misrepresentations and actions of Fragomeni in failing

to file an action on behalf of Sandman personally within the statute of limitations. The factual allegations of Sandman's amended complaint only state a claim that Fragomeni engaged in misrepresentations and legal malpractice while acting as an independent contractor and attorney for Sandman, not as an employee of Quincy Mutual or one subject to its direction and control.

For present purposes, the allegations that Fragomeni told Sandman that Quincy Mutual "hired him" to pursue her negligence claims against Lamparelli and that he would represent her individual interests, and that she relied on those representations, sets forth an attorney-client relationship with Sandman that both defines and limits the parties who are potentially liable to Sandman for misrepresentation and malpractice. See *DeVaux* v. *American Home Assur. Co.*, 387 Mass. 814, 818 (1983) (attorney-client relationship arises when person seeking legal advice or assistance from attorney relies reasonably to her detriment on attorney to provide same, and attorney, aware of such reliance, does nothing to negate it). As matter of law, Quincy Mutual cannot be vicariously liable for the representations and professional negligence of Fragomeni, because as an attorney and an independent professional he has a nondelegable duty of care to Sandman. See *Sullivan*, 439 Mass. at 406 (as matter of law, attorney is independent contractor with separate and distinct obligations to the client, and therefore, any alleged negligence by attorney did not subject insurer who retained him to vicarious liability).

*Sullivan, supra* at 406-410, relied upon by Quincy Mutual in its motion to dismiss and supporting memorandum and by the judge in his initial allowance of the motion to dismiss,[7] is dispositive of all of Sandman's vicarious liability claims against

---

[7]Given Fragomeni's position as an attorney and independent contractor with nondelegable duties to his client Sandman, the motion judge need not have inquired further (as he did in denying Sandman's motion for reconsideration) whether Fragomeni had actual or apparent authority from Quincy Mutual to represent Sandman, or whether Fragomeni's assertions to Sandman were within the scope of his authority from Quincy Mutual. The existence of an attorney-independent contractor relationship between Fragomeni and Sandman renders such inquiries irrelevant upon a claim that Quincy Mutual is vicariously liable for Fragomeni's derelictions.

Quincy Mutual.[8] There, the Supreme Judicial Court considered "whether an insurer who hires an attorney to defend its insured may be liable for any negligence by that attorney in the representation of the insured." *Id.* at 408. In concluding that the insurer could not be vicariously liable, the court explained:

> " 'Since an insurer is not permitted to practice law, it must rely on independent counsel for conduct of litigation, and in doing so it does not assume a nondelegable duty to present an adequate defense. Since the conduct of the litigation is the responsibility of trial counsel, the insurer is not vicariously liable for the negligence of the attorneys who conduct the defense for the insured.' 7C J.A. Appleman, Insurance Law and Practice § 4687, at 192-193 (rev. ed. 1979). Rule 5.4(c) of the Massachusetts Rules of Professional Conduct, as appearing in 430 Mass. 1303 (1999), states: 'A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services.' As such, a lawyer hired by an insurer to represent an insured owes an unqualified duty of loyalty to the insured and must act at all times to protect the insured's interests. Cf. *McCourt Co.* v. *FPC Props., Inc.*, 386 Mass. 145, 146 (1982)."

*Id.* at 408-409.

The various counts of Sandman's amended complaint all derive ultimately from the contention that Quincy Mutual is vicariously liable for Fragomeni's alleged misrepresentations and legal malpractice in asserting that he would pursue her personal claims against Lamparelli, not filing an action within

---

[8]The dissent would distinguish *Sullivan* from the instant case because in *Sullivan*, "[t]here was no dispute that the attorney represented only the insured, and not the insurer, and that the attorney's conduct of the litigation was undertaken solely on behalf of the insured." *Post* at 197. On the claims before us, the purported distinction is entirely without a difference.

Nothing in *Sullivan* suggests that dual representation of the insurer and the insured would alter the vicarious liability determination. Indeed, even were Sandman able to establish that Quincy Mutual hired Fragomeni to represent her personally and paid for that representation, Fragomeni was subject to a professional duty to attend to the interests of his client Sandman, and not to allow Quincy Mutual's underwriting of those expenses to infringe on his duty of competent representation. See *Sullivan, supra* at 410.

the statute of limitations, and then claiming that he never repre-
sented her personal interests. Sandman's amended complaint
does not allege that Fragomeni was Quincy Mutual's employee.[9]
Further, nothing in the amended complaint alleges, even remotely,
that Quincy Mutual retained any control over Fragomeni's
performance of his professional duties in the representation of
Sandman. See *Sullivan, supra* at 407 ("Generally speaking, the
employer of an independent contractor is not liable for harm
caused to another by the independent contractor's negligence,
except where the employer retained some control over the man-
ner in which the work was performed"). The complaint contains
no factual assertions that any employees, adjusters, or other
representatives of Quincy Mutual represented to Sandman that
Quincy Mutual would provide for her legal representation in the
pursuit of her personal claim for damages.[10] Nor does it assert
that Quincy Mutual directed, commanded, or knowingly
authorized the acts or omissions of Fragomeni. Compare *Trau-
Med of Am., Inc.* v. *Allstate Ins. Co.*, 71 S.W.3d 691, 697 (Tenn.
2002) (insurer can be held vicariously liable for acts or omis-
sions of attorney hired to represent insured when those acts or
omissions were, at least in part, directed, commanded, or know-
ingly authorized by insurer). The amended complaint offers no
allegations that Quincy Mutual was negligent in hiring Frago-
meni to act as attorney on Sandman's behalf, or that Quincy
Mutual knew or should have known that Fragomeni was not
competent.

In these circumstances, there is no basis upon which Quincy
Mutual may be vicariously liable for Fragomeni's malpractice
because it is Fragomeni who controlled the strategy, conduct,
and daily details of representation of Sandman, and his ethical
obligations to Sandman prevent the insurer from exercising the
degree of control necessary to justify the imposition of vicarious
liability. *Sullivan, supra* at 409. Accordingly, Sandman's recourse
for Fragomeni's alleged misrepresentations and malpractice is her

---

[9]To the contrary, the complaint alleges that Quincy Mutual "hired" Frago-
meni to represent her, and that Fragomeni maintained professional offices in a
location different from those of Quincy Mutual.

[10]To the contrary, Quincy had already denied Sandman's claim for damages
to her personal property based upon the pollution exclusion provision of the
policy. See notes 3 and 4, *supra*.

action against him, which remains pending, and not one in vicarious liability against Quincy Mutual.[11]

*Judgment affirmed.*

BROWN, J. (dissenting). I think the plaintiff prevails under a proper analysis of this matter as framed — a motion to dismiss a complaint under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974). Unlike the motion judge, I limit my review to the facts alleged in the amended complaint. See, e.g., *Romano* v. *Sacknoff*, 4 Mass. App. Ct. 862, 863 (1976). Arguably, there may be material available to the defendant that could support a motion pursuant to Mass.R.Civ.P. 56, 365 Mass. 824 (1978). Any such materials, however, were not before the judge here.[1]

The majority focuses primarily on the relationship between Frank L. Fragomeni and Elaine F. Sandman, but in my view, the significance of this action lies in the fact that Fragomeni was the attorney for Quincy Mutual Fire Insurance Company (Quincy Mutual) and, therefore, presumably acted at Quincy Mutual's behest. It is impossible for me to imagine a scenario where Quincy Mutual had absolutely no knowledge of (or input into) what Fragomeni was doing in the litigation, given that he was conducting and defending against discovery, among other things, including getting Sandman's cooperation and involvement.

Sandman's amended complaint alleged that Fragomeni told her he had been hired by Quincy Mutual to pursue her claims for negligence against the oil delivery company, and also alleged that Fragomeni was Quincy Mutual's attorney in its sub-

---

[11]Sandman's claims against Quincy Mutual fare no better even with the additional allegations contained in her proposed motion to further amend her complaint, discussed by the dissent, *post* at 198-199. Neither the fact that one of "dozens" of letters from her to Fragomeni was found in Quincy Mutual's subrogation file or that Quincy's subrogation action made reference to Sandman's individual losses amounts to a factually based assertion that Fragomeni was anything other than an independent contractor in his dealings with both Quincy Mutual and Sandman.

[1]For a succinct discussion regarding the pitfalls associated with rule 12(b)(6), see *Kirkland Constr. Co.* v. *James*, 39 Mass. App. Ct. 559, 564-565 (1995) (Brown, J., concurring).

rogation action.[2] Under well-established principles of agency, as applied to the attorney-client relationship between Fragomeni and Quincy Mutual, I view those allegations as plausibly suggesting that Sandman is entitled to relief against Quincy Mutual based on actual authority.

"Where there is actual authority to transact the very business or to do the very act that causes the harm, the agent acts as the extension of the will of his principal . . . ." *Kansallis Fin. Ltd.* v. *Fern*, 421 Mass. 659, 665 (1996). Actual authority "is the agent's power to affect the principal's relations with third parties as manifested to the agent by the principal." *Theos & Sons, Inc.* v. *Mack Trucks, Inc.*, 431 Mass. 736, 743-744 (2000), citing Restatement (Second) of Agency § 7 (1958).[3] Taking the factual allegations in Sandman's amended complaint as true, Fragomeni's statement to Sandman that he had been hired by Quincy Mutual to pursue her negligence claims against Lamparelli was sufficient to make out a claim that he been given actual authority by Quincy Mutual to do just that. Sandman's claim is not defeated by the conflicting loyalties that such an arrangement would pose for an attorney in Fragomeni's position, as at the pleading stage, we assume the truth of the allegations, however doubtful. See *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 636 (2008). See also *Jessie* v. *Boynton*, 372 Mass. 293, 302-303 (1977).

Furthermore, the factual allegation that Fragomeni was Quincy

---

[2]In denying Sandman's motion for reconsideration, the judge reasoned, among other things, that Fragomeni did not have actual or apparent authority from Quincy Mutual to represent to Sandman that he would pursue her claims, and that there was no evidence that Fragomeni's representations to Sandman were made within the scope of his authority from Quincy Mutual. The judge relied on *Rossi* v. *School Comm. of Everett*, 354 Mass. 461 (1968), a case decided on agreed facts that established that a city solicitor who was engaged to represent the school committee at a hearing before the Civil Service Commission lacked actual authority to bind the school committee to a settlement of an employee's claim. Unlike *Rossi* v. *School Comm. of Everett, supra,* there was no requirement that Sandman provide evidence of the scope of Fragomeni's authority beyond her factual allegations that Fragomeni told her he had such authority and that he was Quincy Mutual's attorney.

[3]By contrast, apparent authority is confirmed by the conduct of the principal that causes a third party reasonably to believe that a particular person has authority to act on the principal's behalf. *Hudson* v. *Massachusetts Property Ins. Underwriting Assn.*, 386 Mass. 450, 457 (1982).

Mutual's attorney while dealing with Sandman bolstered Sandman's claim that Quincy Mutual is liable for Fragomeni's statements to her. "While in a broad sense counsel may be an agent and his client a principal, there is much more involved than mere agency." *Burt* v. *Gahan*, 351 Mass. 340, 342 (1966). It has long been held that "the acts of the attorney in the conduct of litigation are binding upon the client." *Ibid.* See *Silva* v. *Pereira*, 1 Mass. App. Ct. 368, 371 (1973); *Lechoslaw* v. *Bank of America, N.A.*, 618 F.3d 49, 57 (1st Cir. 2010). That is because the attorney's words and conduct, if occurring within the scope of the attorney's employment, are presumed to be done on the client's instructions, "differing only in weight, but not in competency, from [the client's] personal words and acts." *James* v. *Boston Elev. Ry.*, 201 Mass. 263, 266 (1909) (attorney's letter concerning client's physical condition before accident for which she sought damages was binding on client). See, e.g., *McMahon* v. *Lynn & Boston R.R.*, 191 Mass. 295, 298-299 (1906); *Household Fuel Corp.* v. *Hamacher*, 331 Mass. 653, 656-657 (1954) (attorney's stipulation to undisputed facts was binding on clients); *Blake* v. *Hendrickson*, 40 Mass. App. Ct. 579, 582 (1996) (contents of attorney's letter to plaintiff's insurance company was binding on plaintiff in subsequent litigation). Compare *Silva* v. *Pereira, supra* (general rule that counsel's statements are binding on client did not apply to attorney's opening statement regarding expected proof at trial).

The case of *Herbert A. Sullivan, Inc.* v. *Utica Mut. Ins. Co.*, 439 Mass. 387, 409 (2003), does not hold otherwise. There, the insurer hired an attorney to represent the insured, pursuant to the insurer's duty to defend under the policy. There was no dispute that the attorney represented only the insured, and not the insurer, and that the attorney's conduct of the litigation was undertaken solely on behalf of the insured. "In these circumstances, the insurer cannot be vicariously liable for the lawyer's negligence." *Ibid.*

Because the negligent attorney in *Herbert A. Sullivan, Inc., supra*, did not represent the insurer, the holding does not implicate the line of cases, cited above, that render an attorney's words and conduct binding on the attorney's client in certain circumstances. The Supreme Judicial Court's limiting language

in *Herbert A. Sullivan, Inc., supra,* does not preclude the imposition of liability on Quincy Mutual for the harm caused to the insured by Quincy Mutual's own attorney, while pursuing litigation on Quincy Mutual's behalf. See, e.g., *James* v. *Boston Elev. Ry., supra* ("The attorney was her agent and representative, acting in her business").

The interplay between agency principles and the presumption that an attorney's words and conduct are undertaken on the client's instruction — here, Quincy Mutual — deserves consideration on a more complete record than rule 12(b)(6) permits. As to whether Quincy Mutual should be liable for its own attorney's conduct in these circumstances, I think it preferable that Sandman be permitted "to develop the facts so that the novel theory may be explored and assayed in light of the actual facts rather than a pleader's suppositions." *Ritchie* v. *Department of State Police,* 60 Mass. App. Ct. 655, 663 n.14 (2004). See, e.g., *Kirkland Constr. Co.* v. *James,* 39 Mass. App. Ct. 559, 562-564 (1995).

My conclusion that dismissal was premature is borne out by Sandman's subsequent motion to amend her complaint. Sandman's proposed amendment added allegations that Quincy Mutual's complaint against James Lamparelli included a claim for Sandman's uninsured damages, specifically identifying Sandman's losses for damaged contents, loss of use, and depreciation in value. Sandman also alleged that a letter she wrote to Fragomeni, in which she detailed her losses and sought assistance in their recovery, was found in Quincy Mutual's subrogation file, suggesting that Quincy Mutual knew that Sandman thought Quincy Mutual was involved in the pursuit of her uninsured claims. In addition to lending further support to Sandman's claim that Fragomeni had actual authority to pursue Sandman's uninsured damages, these allegations also supported the reasonable inference that Quincy Mutual authorized Fragomeni to do so in order to improve Quincy Mutual's settlement prospects with Lamparelli on its subrogation claim. See, e.g., *Curtis* v. *Herb Chambers I-95, Inc.,* 458 Mass. 674, 676 (2011) (every reasonable inference is drawn in the plaintiff's favor on a motion to dismiss). Given the additional evidence cited by the parties in support of their respective positions, the issues are

more appropriate for resolution on a motion for summary judgment. See *Romano* v. *Sacknoff*, 4 Mass. App. Ct. at 863 n.2.

I would reverse the judgment dismissing Sandman's amended complaint and remand the case to Superior Court for further proceedings.