Fabricant, Judith, J.
INTRODUCTION
This action arises from the settlement of an earlier personal injury case, which the plaintiffs claim resulted from misrepresentations made by defendants. Before the Court is the motion of one defendant, Lexington Insurance Company, to dismiss the claims against it. For the reasons that will be explained, the motion will be allowed.
BACKGROUND
Insofar as pertinent to the present motion, the complaint, alleges as follows.[1] In 2002, plaintiff Angel Adorno was seriously injured while operating a baggage tractor known as a Tug. In 2003, he and his wife, plaintiff Clarisa Adorno, brought suit in this Court against a company known as S&S, which manufactured the Tug, and Jeffrey Sharpe, who had serviced it.[2] Dean Summers, a defendant here, was S&S’s risk manager. John Barclay, also a defendant here, was a consultant to S&S. Lexington Insurance Company insured S&S. The Adornos’ theories in that case were that the Tug was defective and that Sharpe had been negligent in maintaining it, so that both S&S and Sharpe were liable for the injury.
In 2005, in the course of discovery in that case, Barclay gave deposition testimony as an expert for S&S. He expressed opinions about the cause of the accident that tended to exculpate S&S, but inculpate Sharpe. S&S disclosed Barclay’s opinions in the pretrial memorandum, and relied on them in settlement negotiations with the Adornos, which a representative of Lexington attended. The Adornos had no other expert testimony to support their claim against Sharpe.
On February 11,2008, the Adornos and S&S agreed on a settlement. The complaint describes the terms of the settlement as payment of $500,000[3] and “an agreement to produce/release... expert witness John Barclay to testify on behalf of Adorno at trial against Sharpe . . . that Sharpe was negligent.”[4] The Adornos accepted the settlement, according to the complaint, in reliance on Barclay’s opinion, as reflected in his deposition testimony and in the settlement discussions, that the product was not defective and that Sharpe’s negligent maintenance caused the injury.
The Adornos executed releases of S&S and Lexington. Each release recited that, in consideration for the specified monetary payment[5] “and other good and valuable consideration,” the signor released the Releasees (defined as S&S and Lexington) from all claims “because of any matter or thing done . . . prior to and including the date hereof with respect to all injuries and damages” resulting from the accident, specifically including the claims in the 2003 case. Each release also provided:
The undersigned further declares and represents that no promise, inducement or agreement not herein expressed has been made to the undersigned, and that this Release contains the entire agreement between the parties hereto, and that the terms of this Release are contractual and not a mere recital.
* * *
It is expressly agreed that there is no agreement or promise on the part of the Releasees to do or omit to do any act or thing not herein mentioned and that the above consideration is in full accord, satisfaction and settlement of any and all claims arising from or out of any and all matters aforementioned.
The Court approved the settlement on March 6, 2008. Lexington paid the settlement proceeds; and separate *330 and final judgment entered on the Adornos’ claims against S&S on May 16, 2008.
On July 8, 2008, Barclay gave further deposition testimony in his new capacity as the Adornos’ expert witness. His testimony this time, in contrast to his previous testimony, inculpated S&S, and exculpated Sharpe. He attributed the change to a test he had conducted after the earlier deposition. The change in Barclay’s opinion left the Adornos without support for their claim against Sharpe, and that claim was dismissed.[6]
Based on these factual allegations, the complaint sets forth seven counts against five defendants. The six counts against Lexington are intentional misrepresentation (count I); negligent misrepresentation (count II); fraud in the inducement (count III) ;[7] breach of contract (count IV); unjust enrichment (count V); and breach of the implied covenant of good faith and fair dealing (count VI). The three misrepresentation claims each refer to “the representations made by defendants,’’ without further specification. Count I alleges that the representations “were known by the defendants, and each of them, to be false at the time they were made.” Count II alleges that the defendants “had no reasonable grounds for believing the statements to be true,” that defendants “implied that they had knowledge of the true facts but in fact were actually ignorant of the true facts,” and that defendants made the representations “without regard for the truth of the said representations.” Count III alleges that the plaintiffs’ assent to the settlement agreement “was induced and/or caused by the material fraudulent representations of the defendants,” and that the defendants’ conduct was “malicious, fraudulent, oppressive and/or recklessly committed, with wanton disregard of the plaintiffs’ rights.”
DISCUSSION
In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, but disregards conclusions and characterizations. See Sisson v. Lhowe, 460 Mass. 705, 707 (2011); Welch v. Sudbury Youth Soccer Ass’n, Inc., 453 Mass. 352, 354 (2009); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). To withstand a motion to dismiss, a plaintiffs complaint must set forth “allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect [a] threshold requirement . . . that the plain statement possess enough heft to sho[w] that the pleader is entitled to relief.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (internal quotations omitted). While a complaint need not set forth detailed factual allegations, a plaintiff is required to present more than labels and conclusions, and must raise a right to relief “above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact).” Id. See also Harvard Crimson, Inc. v. President & Fellows of Harvard Coll., 445 Mass. 745, 749 (2006).
1. Misrepresentation Claims (Counts I, II, III, and IV).
Lexington contends that the counts alleging misrepresentation fail to state a claim for at least three independent reasons: (1) the facts alleged do not identify any false statement made by or attributable to Lexington, still less any such statement identified with the level of particularity required by Mass.R.Civ.P. 9(b); (2) the plaintiffs could not have reasonably relied on statements made by or on behalf of the opposing party in litigation; and (3) the release by its terms precludes the plaintiffs’ reliance on any promises or representations not set forth in it. The Court agrees with Lexington on the first point, and therefore need not address the others.[8]
To state a claim of misrepresentation, a plaintiff must allege that the defendant made a false statement of material fact, with the intention to induce the plaintiffs reliance, and that the plaintiff reasonably relied on the statement, to his detriment. Russell v. Cooley Dickinson Hosp., Inc., 437 Mass 443, 458-59 (2002); Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 467-68 (2003); Collins v. Huculak, 57 Mass.App.Ct. 387, 391 (2003); Zimmerman v. Kent, 31 Mass.App.Ct. 72, 79 (1991). With respect to a claim of intentional fraud, to satisfy the requirement of Rule 9(b) the complaint must specify with particularity the identity of the speaker, the contents of the statement, where and when the statement was made, and its materiality, as well as the plaintiffs reliance and the resulting harm. Freedman v. Jablonski, 371 Mass. 482, 488 (1976).
The complaint here alleges that S&S (presumably through its counsel) made representations in its final pretrial memorandum in the earlier case. It also alleges that S&S (apparently through counsel and/or its claims representative) made representations in settlement negotiations, at which a representative of Lexington was present. The complaint also alleges that Barclay made statements in his two depositions, as well as in preparatory conversation with the Adornos’ counsel. But the complaint does not allege any statements made by Lexington at any time, on any subject.
The plaintiffs’ theory in this regard seems to be that statements made by counsel for S&S are attributable to Lexington, its insurer, because counsel for S&S negotiated a release of Lexington. See Celluci v. Sun Oil Co., 368 Mass. 811, 811-12 (1975) (principal bound where agent had apparent authority to negotiate contract); Sheehy v. Lipton Indus., Inc., 24 Mass.App.Ct. 188, 192 (1987) (evidence of misrepresentation by broker attributable to principal); compare Herbert A. Sullivan, Inc. v. Utica Mutual Ins. Co., 439 Mass. 387, 410 (2003) (insurer not vicariously liable for negligence of attorney appointed to defend insured); Sandman v. Quincy Mutual Fire Ins. Co., 81 *331 Mass.App.Ct. 188, 192 (2012) (insurer not vicariously liable for misrepresentations to insured of attorney appointed to represent insured).[9]
The problem with this theory is that the complaint nowhere identifies any false statement of fact made by the unidentified attorney, or the claims representative, while acting as agent for Lexington in negotiating a release. All the complaint alleges is that Barclay gave certain deposition testimony; that S&S disclosed in the joint pre-trial memorandum that it would offer evidence in accord with Barclay’s deposition testimony; and that, in the course of settlement discussions, S&S “made certain representations based upon Barclay’s statements and opinions.” These allegations do not identify any false statement of fact made by anyone acting in the capacity of agent for Lexington.
The plaintiffs also point to cases indicating that, in certain circumstances, provision of incomplete information, so as to mislead, can constitute misrepresentation. E. g., Kannavos v. Annino, 356 Mass. 42, 48 (1969). The point of law is correct, but nothing in the complaint indicates that Lexington provided incomplete information, or any information, on any topic. The mere presence of an unidentified representative of Lexington at a negotiating session does not constitute a representation, and does not make Lexington responsible for whatever statements might have been made on behalf of its insured. See Sandman, supra Since the complaint fails to allege any statement by Lexington, which is an essential element of a claim for either negligent or intentional misrepresentation, counts I, II, and III must be dismissed.
Count v. is labeled “unjust enrichment.” Unjust enrichment is the “retention of money or property of another against the fundamental principles of justice or equity and good conscience.” Santagate v. Tower, 64 Mass.App.Ct. 324, 329 (2005). To state a claim for unjust enrichment, a plaintiff must allege facts indicating “unjust enrichment of one party and unjust detriment to another party.” Salomon v. Terra 394 Mass. 857, 859 (1985). The plaintiffs complaint does not allege that Lexington received or has retained any money or property of the plaintiffs. The claim, rather, is that “as a result of the actions and misrepresentations as set forth above, the defendants, and each of them, unjustly received benefits at the expense of the plaintiffs through their wrongful conduct,” which it would be unjust for them to retain. The essence of the claim, it thus appears, is the same as the misrepresentation counts discussed supra Since the complaint fails to allege any misrepresentations by Lexington, this count too must be dismissed.
Plaintiffs suggest that, if the misrepresentation claims are dismissed, they should be permitted to amend, and to take discovery to facilitate adequate pleading. The Court recognizes that, in some circumstances, a plaintiff reasonably needs at least limited discovery to obtain facts necessary to meet a requirement of pleading with particularity. The Court is not persuaded that such is the case here. If, as the plaintiffs allege, they relied on a statement made to them, either directly or through their counsel, in a settlement negotiation, either they or their counsel would know the content of the statement, who made it, and in what precise circumstances. No discovery would be necessary to obtain that information. The Court therefore declines to grant leave to amend.
2. The Contract Claims (Counts IV and VI).
As indicated supra the plaintiffs each executed a release, in which they agreed that “no promise, inducement or agreement not herein expressed has been made to the undersigned, and that this Release contains the entire agreement between the parties hereto,” and “that there is no agreement or promise on the part of the Releasees to do or omit to do any act or thing not herein mentioned.” This language is a particularly explicit and comprehensive version of a standard integration clause. See Bendetson v. Coolidge, 7 Mass.App.Ct. 798, 801-03 (1979) (similar language). “A fully integrated agreement is a statement which the parties have adopted as a complete and exclusive representation of their agreement.” Starr v. Fordham, 420 Mass. 178, 188 n.8 (1995). The parol evidence rule bars the introduction of a prior or contemporaneous agreement to contradict or vary the terms of a fully integrated contract. Id., 420 Mass. at 187-88; Commerce Bank & Trust Co. v. Hayeck, 46 Mass.App.Ct. 687, 691 (1999); Kobayashi v. Orion Ventures, 42 Mass.App.Ct. 492, 496 (1997).
The plaintiffs’ contract claim, count IV, seeks to enforce a promise alleged to have been made as part of the settlement agreement, that does not appear in the written agreement. Such reliance on a prior or contemporaneous oral promise is exactly what the parol evidence rule prevents. The plaintiffs seek to avoid this conclusion by pointing to the language in the releases that describes the consideration as the specified amount of money “and other good and valuable consideration." This boilerplate phrase cannot bear the weight plaintiffs seek to place on it.[10] The integration clause limits the obligations of the releasees to those expressly stated. The only such obligation identified in the document is the payment of the specified amount of money, which plaintiffs concede that Lexington did. Count IV is barred by the parol evidence rule, and must-be-dismissed.
Count VI, alleging breach of the implied covenant of good faith and fair dealing, fails for the same reason. The implied covenant “does not create rights and duties which the parties did not negotiate and include in their agreement.” The Renovator’s Supply, Inc. v. Sovereign Bank, 72 Mass.App.Ct. 419, 433 (2008). Rather, the implied covenant “concerns the manner of performance,” Uno Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004), providing that “neither party shall do anything that will have *332 the effect of destroying or injuring the right of the other party to receive the fruits of the contract.” Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 471-72 (1991). Here, the fruits of the contract, for the plaintiffs, was the receipt of the specified payments. Nothing in the allegations of the complaint identifies any conduct by Lexington that interfered with the plaintiffs’ receipt of those payments.
CONCLUSION AND ORDER
For the reasons stated, the Motion to Dismiss by Lexington Insurance Company is ALLOWED.

 Along with the complaint, the Court considers documents on which the allegations of the complaint rely, particularly the releases executed in the earlier case, copies of which defendant has supplied. See Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 (2004).

 That case was Suffolk Superior Court Civil Action No. 2003-4609. The complaint in this case identifies defendants BAE Systems Resolution, Inc., and Tug Technologies Corporation as successors in interest to S&S.

 The Adornos contend that that amount was substantially less than their damages.

 The complaint provides no further explanation of this confusing phrasing. Since S&S could hardly compel Barclay to provide expert testimony for the Adornos, or control the substance of any testimony he might give, the Court understands the allegation to mean that S&S agreed to release Barclay from any obligations he might have had to it that would have preventéd- him from testifying on behalf of the Adornos.

 The releases allocated $450,000 to Angel Adorno and $50,000 to his wife.

 The complaint does not indicate whether the Adornos dismissed the claim voluntarily, or the Court dismissed it on motion. The docket in that case, which the Court may consider in connection with the present motion, see Reliance Ins. Co. v. Boston, 71 Mass.App.Ct. 550, 555 (2008), reflects that Sharpe moved to dismiss, and the Adornos assented.

 There is room for doubt as to how count III differs from count I; the substance of each appears to be that defendants made intentional misrepresentations to induce plaintiffs to enter into the settlement agreement, and that plaintiffs relied on those misrepresentations in doing so.

 The Court notes nevertheless that, while an integrated contract such as the release in this case would preclude a claim of negligent misrepresentation based on representations outside the contract, it would not preclude a claim of intentional fraud inducing the contract. See Bates v. Southgate, 308 Mass. 170, 182 (1941); Greenleaf Arms Realty Trust I, LLC v. New Boston Fund, Inc., 81 Mass.App.Ct. 282, 289 (2012); Sound Techniques, Inc. v. Hoffman, 50 Mass.App.Ct. 425, 429 (2000).

 Plaintiffs also cite Linkage Corp. v. Boston Univ., 425 Mass. 1, 19(1997), forthe proposition that “one cannot accept the benefits of a transaction purporting to be done in his behalf and afterwards repudiate it.” That case involved breach of express terms of a written contract, negotiated for the defendant by an agent, along with related torts. Nothing similar is alleged here.

 Plaintiffs cite Maybury v. Izenstatt 320 Mass. 397, 403 (1946), in which similar language appeared. The agreement in that case, as described in the opinion, did not include an integration clause. In that context, the Court held that the trial court had not erred in admitting evidence of a contemporaneous oral agreement for consideration not reflected in the written document. The unequivocal integration language in the releases executed by the plaintiffs here distinguishes this case.